**Lance Corey DeLARUE, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 14–01–01182–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

March 27, 2003.

David Cunningham, Houston, for Appellant.

Eric Kugler, Houston, for Appellee.

Panel consists of Justices YATES, FROST, and Senior Justice DRAUGHN.*

## OPINION

JOE L. DRAUGHN, Justice (Assigned).

After a jury trial, appellant was convicted of intoxication manslaughter. TEX. PEN. CODE § 49.08 (Vernon 1994). On appeal, appellant asserts five points of error. We affirm.

### FACTUAL AND PROCEDURAL HISTORY

In June 2000, Misty Purcell, complainant and decedent, and a female friend, Lisa Murphy, met appellant, Lance DeLarue, and his roommate, Nick LaRoche, for drinks at a sports bar. After an evening of drinking, the group decided to go to the apartment shared by appellant and his roommate. Complainant's friend drove the roommate; complainant and appellant rode together in appellant's van.

On the way to appellant's apartment, complainant and appellant were involved in a traffic accident. The van was discovered upside down on the side of a dangerous curve in the road.

Both appellant and complainant were ejected from the van during the accident. Complainant landed approximately 40 feet from where the vehicle stopped; her injuries were primarily on the right side of her body. Her arm, which was severed at the elbow, landed approximately twelve feet from the vehicle on the opposite side as her body. The hand of her severed arm clutched a gold-colored barrette. Complainant died shortly after the accident; her death was caused by a fractured cervical column, transected aorta, and loss of

* Senior Justice Joe L. Draughn sitting by assignment.

blood associated with the loss of her right arm.

Appellant landed approximately 10–15 feet from the vehicle. His injuries were primarily on the left side of his body. He has since recovered.

There is conflicting testimony as to who was driving the van the night of the accident. At the scene, appellant told witnesses *he* was the driver; he said another vehicle struck his van and forced him off the road. At trial, appellant claimed *complainant* was driving and that appellant's prior assertions were the result of a mild traumatic brain injury and alcohol-induced amnesia.

At the hospital, blood was drawn from the appellant, during which time he again admitted he was the driver of the vehicle. Also at the hospital, appellant verbalized his fear that there was alcohol in his blood and he talked about getting a lawyer. He left the hospital through the back halls wearing only his hospital robe. He was never discharged.

In the days immediately following the accident, appellant continued to acknowledge he was the driver of the van. He told complainant's friend he remembered "running off the road that night," indicating to the friend that he was the vehicle's driver; he expressed remorse at causing the accident; and he told another of complainant's friends that moments before the accident complainant was laughing, playing with her hair, and talking about her son's birthday the next day.

There is no dispute that appellant was intoxicated the night of the accident. His blood alcohol level was .262 and his urine tested positive for marijuana. Additionally, evidence indicates he had a strong odor of alcohol about him, his speech was slurred, and he stumbled and spoke loudly as intoxicated people frequently do. He admitted to drinking alcohol prior to driving, and, when a deputy with the Harris County Sheriff's Traffic Enforcement Division performed a horizontal gaze nystagmus test on appellant at the accident site, he was observed displaying all six indicators for intoxication. There was no evidence of a head injury.

At trial, two expert witnesses testified as to how the accident occurred. The State's witness—Deputy David Pearson—testified appellant's van rolled first to its left side, then at least one and one-half more times, with the vehicle being airborne during part of the roll. Based on information gathered at the scene, Pearson determined the van was traveling 76.9 miles per hour when it left the road; there was no evidence another car had struck the vehicle; and neither occupant wore a seatbelt. He opined appellant was driving the vehicle and complainant was ejected from the van first.

Testifying for the defense was Stephen Irwin, an accident reconstructionist. Irwin determined the vehicle left the road going 55 mph. He agreed the van rolled on to the driver's side first, but testified he believed the vehicle did a "football" type roll for a total of only one and one-half rolls. His testimony supported appellant's theory that complainant was driving at the time of the accident.

At trial, both sides presented testimony from a forensic pathologist. The State's witness testified the type of injury complainant sustained indicated she was sitting in the passenger seat at the time of the accident; appellant's witness testified complainant's injuries were consistent with complainant being the driver.

After a jury trial, appellant was found guilty of the charge of intoxication manslaughter. In addition, he was found guilty of using a deadly weapon-namely, a motor vehicle-in commission of the offense.

TEX.CRIM. PROC.CODE ANN. § 42.12 (Sec.3g) (a)(2) (Vernon 2003). The trial court assessed punishment at forty years' confinement in the Texas Department of Criminal Justice Institutional Division. Appellant filed a timely notice of appeal.

## ISSUES ON APPEAL

Appellant asserts five points of error, arguing the trial court improperly (1) found the State's expert witness qualified to give expert opinion as to rollover sequencing and events within the vehicle; (2) denied appellant a meaningful *Daubert–Kelly* hearing[1] to test the admissibility of certain evidence; (3) admitted evidence regarding the presence of marijuana in appellant's system; (4) allowed victim-impact evidence during the guilt-innocence phase of the trial; and (5) overruled defense counsel's objection that the State's argument during final summation went outside the record.

## EXPERT TESTIMONY

In his first and second points of error, appellant asserts the trial court erred when it (1) found the State's expert witness was qualified to give expert opinion as to rollover sequencing and events occurring within the vehicle at the time of the accident; and (2) denied appellant a "meaningful" *Daubert–Kelly* hearing to test the admissibility of certain scientific evidence. We disagree.

### 1. Standard of Review

■ The decision as to whether an expert witness is qualified to testify is a matter committed to the trial court's discretion. *Thomas v. State*, 915 S.W.2d 597, 600 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd); *Harris County Hosp. Dist. v. Estrada*, 872 S.W.2d 759, 762 (Tex.App.-

Houston [1st Dist.] 1993, writ denied). A trial court enjoys wide latitude in determining whether expert testimony is admissible. *Hernandez v. State*, 53 S.W.3d 742, 750 (Tex.App.-Houston [1st Dist.] 2001, no pet.). The trial court abuses its discretion when its decision is so clearly wrong as to fall outside the zone of reasonable disagreement and when the trial court acts so arbitrarily and unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990).

■ A trial court's decision to admit scientific testimony likewise should not be overturned absent an abuse of discretion. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex.Crim.App.2000); *Morales v. State*, 32 S.W.3d 862, 865 (Tex.Crim.App.2000). In an application of law to fact question, the appellate courts should view the evidence in the record in the light most favorable to the trial court's ruling. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).

■ Any non-constitutional "error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." TEX.R.APP. P. 44.2(b) (Vernon 2002). A substantial right is affected when an error has a substantial, injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997). If, on the record as a whole, it appears that the error "did not influence the jury, or had but a slight effect," this Court must consider the error harmless and allow the conviction to stand. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex.Crim.App.1998).

### 2. Discussion

■ If "scientific, technical, or other specialized knowledge will assist the trier

---

1. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim.App.1992).

of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 590–9, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993); *Helena Chemical Co. v. Wilkins,* 47 S.W.3d 486, 499 (Tex.2001). A two-part test governs whether expert testimony is admissible: (1) the expert must be qualified; and (2) the testimony must be relevant and be based on a reliable foundation. *Id.* at 499, citing *E.I. du Pont de Nemours v. Robinson,* 923 S.W.2d 549, 556 (Tex.1995); *Hartman v. State,* 946 S.W.2d 60, 62 (Tex.Crim.App.1997). The trial court makes the initial determination about whether the expert and the proffered testimony meet those requirements. *Robinson,* 923 S.W.2d at 556.

█ In deciding if an expert is qualified, trial courts "must ensure that those who purport to be experts truly have expertise concerning the actual subject about which they are offering an opinion." *Helena Chem'l Co.,* 47 S.W.3d at 499, citing *Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 719 (Tex.1998).

**A. Qualifications**

█ It is the responsibility of the party seeking qualification of a witness as an expert to show the special knowledge of the specific matter on which the expert is to testify. *Ventroy v. State,* 917 S.W.2d 419, 422 (Tex.App.-San Antonio 1996, pet. ref'd). Special knowledge which qualifies a witness to give an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a varying combination of these things. *Wyatt v. State,* 23 S.W.3d 18, 27 (Tex.Crim.App.2000); *Thomas v. State,* 915 S.W.2d 597, 600 (Tex.App.-Houston [14th Dist.] 1996, pet. ref'd). Expert testi-

mony cannot be based upon mere guess or speculation, but must have proper factual basis; opinions which are purely speculative or conjectural should be excluded. *Naegeli Transp. v. Gulf Electroquip, Inc.,* 853 S.W.2d 737, 741(Tex.App.-Houston [14th Dist.] 1993, writ denied).

█ Accident analysts and reconstruction experts may be qualified to testify as to the cause of an accident if they are highly trained in the science of which they testify. *Lopez v. Southern Pac. Transp. Co.,* 847 S.W.2d 330, 334 (Tex.App.-El Paso 1993, no writ); *Trailways, Inc. v. Clark,* 794 S.W.2d 479, 483 (Tex.App.-Corpus Christi 1990, writ denied).

█ As a general rule, police officers are not qualified to render expert opinions regarding accidents based on their position as police officers alone. *Lopez,* 847 S.W.2d at 334. However, police officers are qualified to testify regarding accident reconstruction if they are trained in the science about which they will testify and possess the high degree of knowledge sufficient to qualify as an expert. *Chavers v. State,* 991 S.W.2d 457, 460–61 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd); *Trailways, Inc.,* 794 S.W.2d at 483; *Gainsco County Mutual Ins. Co. v. Martinez,* 27 S.W.3d 97, 105 (Tex.App.-San Antonio 2000, pet. dism'd by agr.).

In the instant case, appellant argues Pearson was unqualified as an expert because he (1) had but six hours of formal training on rollovers; (2) used a manual on accident reconstruction that had but one chapter out of fifteen devoted to rollovers; (3) had never conducted independent studies or published articles about rollovers, and (4) failed to quantify the number of accidents he had investigated that involved rollovers. *See Fox v. State,* 2002 WL 122056, —— S.W.3d —— (Tex.App.-Houston [14th Dist.] 2002, pet. ref'd) (finding

expert in sexual assault case unqualified where she had not conducted studies or published articles on sexually-abused children or the protocols for interviewing them). We disagree.[2]

■ The central issue regarding Pearson's qualifications is *not* whether he is an expert in rollover sequencing, but rather whether he is qualified to render an opinion regarding how appellant's accident happened and who was driving. *See Helena Chem'l Co.*, 18 S.W.3d at 753 (finding plant scientist/agronomist qualified to render opinion as to plant's susceptibility to charcoal rot disease despite his not being a "plant pathologist").

Here, the evidence shows Pearson performs accident reconstruction on a daily basis. He is a deputy with the police department's Traffic Enforcement Division; his primary responsibility is investigating accidents; he has 20 years of experience reconstructing accidents; and he has attended accident reconstruction courses at Northwestern University's Traffic Institute and locally. Additionally, he has taken courses in accident investigation, field sobriety testing, bicycle/pedestrian accident reconstruction, field training, instructor development, intoxication manslaughter, and vehicle dynamics.

Evidence shows Pearson visited the accident scene three times. He met with people at the scene; he performed tests on the appellant; he measured skid marks, yaw marks, and tire tracks; he pulled a "drag sled" across the surface of the grass to determine a friction coefficient; and he conducted an investigation that lasted three and one-half months.

Because Pearson has "special knowledge" regarding accident reconstruction that was derived from specialized education, practical experience, and an on-site inspection of the accident scene, we conclude the trial court did not act arbitrarily and unreasonably—namely, without reference to any guiding rule or principle—in admitting the State's expert witness's testimony. Thus, we find no abuse of discretion. *See Montgomery v. State*, 810 S.W.2d 372, 380 (Tex.Crim.App.1990).

Accordingly, we overrule appellant's first point of error.

## B. Reliability

In his second point of error, appellant asserts the trial court improperly denied appellant a meaningful *Daubert–Kelly* hearing to test the reliability of the State's accident reconstruction evidence. We disagree. Although appellant's hearing was untimely, we find it nevertheless made sufficient inquiry into Pearson's qualifications and methodology; thus, its lack of timeliness caused no harm to appellant.

Here, the State's witness reconstructs accidents on a daily basis. He has done so for twenty years. Additionally, he was not called upon to testify about proper protocol for conducting an investigation; rather, he was called upon to offer his opinion as to causation. Because Pearson has practical experience, it is not necessary that he be "published" for his opinion to be reliable. *See Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 727 (Tex.1997) (noting publication is not a "prerequisite for scientific reliability").

---

2. Appellant's reliance on *Fox* is misplaced. In *Fox*, this court found that appellant's expert was unqualified to offer an opinion as to (1) the proper protocols for interviewing an abused child; (2) the developmental stages of a child; and (3) the behavioral patterns of an abused child. *Fox*, —— S.W.3d at ——, 2002 WL 122056, at *12. The reason she was unqualified, said this court, was because she had "so little experience in dealing specifically with abused children"—indeed, she had only worked 35–55 child abuse cases in twelve years and conducted no independent studies. *Id.*

■ The proponent of scientific evidence bears the burden of demonstrating by clear and convincing evidence that the evidence is reliable. *Jackson v. State*, 17 S.W.3d 664, 670 (Tex.Crim.App.2000). This is accomplished by showing: (1) the validity of the underlying scientific theory; (2) the validity of the technique applying the theory; and (3) proper application of the technique on the occasion in question. *Id.; Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992).

■ The Court of Criminal Appeals has held that the trial court must conduct a hearing outside the presence of the jury to determine whether the proponent has established all three criteria. *Id.; Massey v. State*, 933 S.W.2d 141, 152 (Tex.Crim. App.1996). This determination is required whether the science at issue is novel or well established. *Hartman v. State*, 946 S.W.2d 60, 63 (Tex.Crim.App.1997); *Jackson*, 17 S.W.3d at 670.

■ Factors that affect a proper determination of these three criteria include, but are not limited to the following: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community; (2) the qualifications of the experts testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question. *Kelly*, 824 S.W.2d at 573. In reviewing reliability, a trial court does not decide whether the expert's conclusions are correct; rather, it determines whether the analysis used to reach those conclusions is reliable. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex. 2002).

■ Accident reconstruction is scientific evidence subject to a *Daubert*-type hearing. *See Waring v. Wommack*, 945 S.W.2d 889, 892 (Tex.App.-Austin 1997, no writ). However, the process trial courts follow in conducting such hearings has not been clearly articulated by our higher courts.

Indeed, the Texas Court of Criminal Appeals has offered no guidance regarding how a trial court should hold a *Daubert– Kelly* hearing, while the Texas Supreme Court has only "vaguely" referred to a "pretrial '*Daubert/Robinson*-type hearing.'" *Maritime Overseas Corp.*, 971 S.W.2d at 422–23 (Hecht, J., and Phillips, J., dissenting) (pointing out that the Texas Supreme Court has not explained "what kind of hearing this is, how it is invoked, [or] when it is to be conducted relative to the commencement of trial"). *See also Daubert*, 509 U.S. at 594, 113 S.Ct at 2797 (holding only that "[t]he inquiry envisioned . . . is a flexible one."); *Kelly*, 824 S.W.2d at 573 (holding only that the proponent of the evidence "must prove by clear and convincing evidence . . . outside the presence of the jury" that proffered evidence is relevant and reliable).

In the instant case, the State presented the accident reconstruction testimony of Deputy Pearson during its case-in-chief. After Pearson recounted his training, his on-the-job experience, and the evidence he found at the scene, he began to opine about how the accident occurred. At this point, defense counsel objected and approached the bench to request a *Daubert* hearing.

At the bench, trial counsel explained that Pearson's testimony:

. . . relates to the actual rollover reconstruction . . . I do want to at this point

have [a] *Daubert* hearing ... as to what happens when the vehicle leaves the ground and begins its roll. .... [I]n order to accurately re-create a rollover sequence, it requires a whole bunch more than just being able to look at skid marks and that kind of stuff. And before he begins offering an opinion as to how this vehicle rolled ... I would like to make sure that he is sufficiently qualified to do that because it is a whole different ballgame than taking skid marks out there.

After the trial court overruled appellant's request for a hearing, appellant was allowed to have a running objection to testimony regarding the rollover sequence. Pearson then proceeded to provide his theory as to how the van rolled, the order in which the occupants were ejected, and whether complainant was the driver or passenger at the time of the accident.

During Pearson's testimony, the trial court took a recess. It was during this recess that the State took Pearson on *voir dire* to establish that Pearson had training in rollover sequencing, that he had investigated rollover accidents on many occasions, and that his methodology was based on techniques detailed in the *Traffic Accident Reconstruction Manual* used by his police force. During cross-examination, defense counsel attempted to question Pearson about the rate of roll deceleration, the rate of energy lost during a roll, center of gravity studies, and occupant kinematics; however, the trial court sustained objections to those questions on the basis they were "outside the scope of this hearing."

The trial court found the witness qualified as an expert under Rule 702 and allowed him to offer his expert opinion as to accident reconstruction. *See* Tex.R. Evid. 702. Pearson then resumed his testimony before the jury about the details of

his investigation, the evidence he found at the scene, the results of appellant's on-site intoxication test, and Pearson's opinion about who was driving that night.

■ According to *Kelly,* a proponent of scientific evidence must prove the three necessary criteria of reliability to the trial court "outside the presence of the jury, *before* the evidence may be admitted." *Kelly,* 824 S.W.2d at 573 (emphasis added). Because the State's *voir dire* examination of Pearson was held *after* a portion of Pearson's evidence was admitted, it was untimely. Indeed, had the trial court determined in the State's *voir dire* examination that Pearson was *not* qualified as an expert—and that his scientific evidence was *not* reliable—the jury would have heard inadmissible evidence.

Thus, we find the trial court abused its discretion in denying appellant a *Daubert–Kelly* hearing prior to admission of Pearson's accident-reconstruction testimony.

■ However—despite the hearing's untimeliness—the State nevertheless produced evidence addressing the proper *Kelly* criteria during the *voir dire* examination. First, it produced evidence about Pearson's education in accident reconstruction; second, it produced evidence about how Pearson determines the direction an unrestrained driver and passenger travel inside a vehicle; third, it produced evidence about how Pearson determines the speed of a vehicle at the time it leaves the road and how this methodology is "commonly accepted," "taught at accident reconstruction schools throughout the country," and based on published techniques; and finally, it produced evidence detailing the methodology Pearson uses to analyze vehicle paths and the order in which passengers are ejected during an accident.

■ Because the evidence attests to (1) the validity of the theory underly-

ing Pearson's accident reconstruction methodology; (2) the validity of the techniques Pearson uses to apply that theory, and (3) how specifically Pearson applied the techniques on the occasion in question, we conclude it was within the trial court's discretion to find Pearson qualified to testify regarding appellant's accident. Moreover, because Pearson's answers to appellant's questions regarding rate of roll deceleration, rate of energy lost, center of gravity issues, and occupant kinematics are not relevant to how *Pearson* reconstructs an accident, we find the trial court properly sustained the State's objections to appellant's questions on these subjects.[3]

 Thus, we conclude appellant was given a meaningful *Daubert–Kelly* hearing, albeit a belated one. Because the *voir dire* examination was properly conducted—and because the trial court properly found Pearson's evidence to be reliable—any error resulting from the timing of appellant's hearing was rendered harmless.[4] *See Jackson v. State,* 17 S.W.3d 664, 672 (Tex.Crim.App.2000) (finding trial court's failure to hold hearing outside jury's presence did not result in admission of unreliable evidence and so did not have "a substantial and injurious effect or influence in determining the jury's verdict.").

Accordingly, we overrule appellant's first and second points of error.

3. The record does not contain a bill of exception or offer of proof to show the facts appellant would have elicited had the trial court not sustained the State's objections to appellant's questions. Thus, appellant has not preserved Pearson's answers for appellate review. *See* TEX.R.APP. P. 33.2; *Jenkins v. State,* 948 S.W.2d 769, 775 (Tex.App.-San Antonio 1997, pet. ref'd).

4. In addition to Pearson's expert testimony, the following evidence also suggests appellant was the van's driver that night: appellant's

## MARIJUANA EVIDENCE

In his third point of error, appellant asserts the trial court erred when it permitted evidence showing the existence of marijuana in appellant's system without requiring the State to show—by reliable and competent scientific evidence—that appellant was under the influence of marijuana at the time of the accident. We agree; however, we conclude the error was harmless.

### 1. Standard of Review

 The standard of review for evidentiary decisions made by the trial judge is the abuse of discretion standard. *Prystash v. State,* 3 S.W.3d 522, 527 (Tex.Crim. App.1999). An abuse of discretion occurs when the trial court acts without reference to any guiding principle or rule. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex. Crim.App.1991). Under this standard, a trial court's decision to admit certain scientific evidence must be within the zone of reasonable disagreement in light of evidence offered at a *Daubert* hearing and the requirements of the Texas Rules of Evidence. *See* TEX.R. EVID. 702; *Hernandez v. State,* 55 S.W.3d 701, 704 (Tex.App.-Corpus Christi 2001, pet granted).

### 2. Discussion

 Appellant claims he was entitled to a *Daubert–Kelly* hearing on the reliabil-

statements after the accident; complainant's lack of a driver's license; complainant's severed arm, with the hand still clutching a barrette; statements made by appellant's friends and acquaintances; statements made by persons who spoke with appellant in the days following his accident; and testimony from the State's forensic pathologist. Thus, even if Pearson's testimony had been inadmissible, a jury still could reasonably have found appellant was the driver at the time of appellant's accident.

ity of the State's evidence pertaining to the presence of marijuana in his system. Because tests that discern evidence of marijuana in appellant's system are unreliable, he argues, admission of such evidence— without proof of reliability through a *Daubert–Kelly* hearing—violates Texas Rule of Evidence 403 because the evidence is more prejudicial than probative.[5] We agree.

The Texas legislature has determined evidence of the presence of a controlled substance—as shown by analysis of a specimen of the person's blood, breath, or urine taken at the request or order of a peace officer—is admissible in a criminal trial arising out of a Chapter 49 offense involving operation of a motor vehicle.[6] TEX. TRANSP. CODE ANN. § 724.064 (Vernon 1999). *See also Emerson v. State,* 880 S.W.2d 759, 764 (Tex.Crim.App.1994); *Scherl v. State,* 7 S.W.3d 650, 652 (Tex. App.-Texarkana 1999, pet. ref'd). Failure to hold a "gatekeeper" hearing under Rule 702 to determine if the evidence has been properly obtained and is reliable, however, can render such evidence inadmissible. *Beard v. State,* No. 0282–00, —— S.W.3d. ——, ——, 2002 WL 31116936, at *6 (Tex. Crim.App.2002). So, too, can failure to extrapolate the presence of a controlled substance back to the time of an accident—because such failure can render the evidence insufficient under a Rule 403 analysis. *Manning v. State,* 84 S.W.3d 15, 22 (Tex.App.-Texarkana 2002, pet. grant-

ed). Because the "consequences and effects" of such evidence are "not within the common knowledge of jurors," expert testimony pointing out the connection between the presence of a controlled substance in an appellant's bloodstream and appellant's behavior is essential to a determination of relevance. *Id.*

Here, the State elicited testimony showing the presence of marijuana in appellant's bloodstream. However, no attempt was made to *quantify* the presence; no attempt was made to show *when* the marijuana was introduced into his system; no attempt was made to show appellant was "under the influence" of the marijuana at the time of the accident; and no attempt was made to show causation between appellant's behavior and the presence of marijuana in his system.

Because there was no *Daubert–Kelly* hearing held to determine the reliability of the State's marijuana evidence as it related to appellant's intoxication and resultant behavior, we find the trial court erred in admitting this evidence. *See Beard,* 2002 WL 31116939, at *6, —— S.W.3d at —— (holding intoxilyzer results are subject to "gatekeeper" hearings under Rule 702 as held in *Kelly* ). *See also Reed v. State,* 59 S.W.3d 278, 282 (Tex. App.-Fort Worth 2001, pet ref'd) (evidence defendant used antidepressant medication and was treated for anxiety and hallucina-

---

5. The State argues appellant failed to preserve his complaint for appellate review because appellant's objection on appeal does not comport with defense counsel's objection at trial. *See Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990). The State asserts that, at trial, appellant objected to the State's marijuana evidence based on Rule 403 of the Texas Rules of Evidence, but that on appeal, appellant objects based on the State's lack of a scientific expert who can testify as to the validity of marijuana tests and results. We disagree.

Appellant filed a motion in limine, made three objections at trial, and repeated his objection on appeal that—without a showing that there is scientific reliability of marijuana testing—admission of such evidence is more prejudicial than probative. We conclude this properly preserved error for review.

6. Appellant was convicted of intoxication manslaughter under § 49.08 of the Texas Penal Code.

tions was unreliable—and therefore inadmissible—where no expert witness testified to assist the jury in understanding the evidence); *Hernandez v. State*, 55 S.W.3d 701, 705 (Tex.App.-Corpus Christi 2001, pet. granted) (testimony regarding urinalysis results was unreliable where State failed to show extent to which theory and technique satisfied the *Kelly* factors). The error, however, was harmless.

A nonconstitutional error that does not affect the substantial rights of an accused must be disregarded. TEX.R.APP. P. 44.2(b). *Manning*, 84 S.W.3d at 24. A substantial right is affected when an error has a substantial, injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim.App.1997). Therefore, a criminal conviction will not be overturned for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury or influenced the jury only slightly. *Schutz v. State*, 63 S.W.3d 442, 444 (Tex.Crim.App.2001).

In the instant case, appellant was convicted of intoxication manslaughter. *See* TEX. PEN.CODE ANN. § 49.08 (Vernon 1994). Jurors were given three alternative theories under which they could find appellant was intoxicated: they could find appellant was intoxicated due to alcohol; they could find appellant was intoxicated due to marijuana; or they could find appellant was intoxicated due to alcohol *and* marijuana.

Uncontroverted testimony at trial indicates appellant was highly intoxicated at the time of the accident, albeit from alcohol. Appellant had several drinks prior to the accident; appellant was asked to leave the first sports bar for being loud and obnoxious; three bystanders at the acci-

dent scene, three police officers, and a nurse all testified appellant had an odor of alcohol about him, slurred speech, and stumbled as if intoxicated; appellant exhibited all six signs of intoxication upon administration of a horizontal gaze nystagmus test; appellant's blood alcohol level was well above the legal limit; and appellant's friend LaRoche testified appellant was concerned about his blood alcohol concentration at the hospital. In addition, appellant's own expert testified appellant was intoxicated during the accident and defense counsel conceded as much during final argument when he stated "we all know how intoxicated [appellant] was . . . we have never once tried to suggest . . . anything differently."

After examining the record as a whole, we find the evidence above strongly supports a finding of intoxication—with or without the marijuana evidence.[7] Indeed, we are assured that if admission of the State's marijuana evidence influenced the jury at all, it did so only slightly. Thus, we find the trial court's error in admitting the evidence to be harmless.

Accordingly, we overrule appellant's third point of error.

### VICTIM IMPACT EVIDENCE

In his fourth point of error, appellant asserts the trial court abused its discretion in admitting evidence concerning the personal life of complainant during the guilt-innocence stage of the trial. We disagree.

### 1. Standard of Review

▇▇▇▇ The admission of victim impact evidence is a matter of discretion of the trial court. *See Contreras v. State*, 59 S.W.3d 362, 364 (Tex.App.-Houston [1st

---

7. Additionally, the issue of whether appellant had marijuana in his system has nothing to do with the primary contested issue at trial— namely, who was driving appellant's van at the time of the accident.

Dist.] 2001, no pet.). A trial court's admission of such evidence is reviewed under an abuse of discretion standard. *Id.; Mosley v. State,* 983 S.W.2d 249, 262 (Tex.Crim. App.1998). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion and the trial court's ruling will be upheld. *See Rachal v. State,* 917 S.W.2d 799, 807 (Tex.Crim.App.1996); *Montgomery,* 810 S.W.2d at 391.

**2. Discussion**

The Texas Court of Criminal Appeals has defined "victim impact" evidence as evidence that is "generally recognized as evidence concerning the effect that the victim's death will have on others, particularly the victim's family members." *Mathis v. State,* 67 S.W.3d 918, 928(Tex.Crim.App.2002). *See also Mosley,* 983 S.W.2d at 261. This includes evidence regarding the physical, psychological, or economic effect of a crime on the victims themselves or their families. *Lane v. State,* 822 S.W.2d 35, 41 (Tex.Crim.App. 1991). *See also Matchett v. State,* 941 S.W.2d 922, 931 (Tex.Crim.App.1996).

In the instant case, appellant asserts the State improperly examined complainant's mother during the guilt-innocence stage of trial:

State: And your one grandchild, that's Misty's child?

Witness: Correct.

State: Was Misty close with her family?

Witness: Misty was very close with her family.

State: What kind of things did Misty like to do?

Defense: Your Honor, may we approach the bench, please?

Court: Sure.

(AT BENCH)

Defense: Your Honor, my objection is that this is victim impact testimony, and it is relevant to punishment, or I believe it exceeds the scope of what is permissible. I object to—

Court: What's the purpose of this?

State: I'm asking basic fact background questions so the jury knows who we are talking about. I have no intention of asking how it has affected [the victim's mother] or anybody else in the family.

Court: Don't get too far afield.

State: I'm almost done.

Defense: Judge, what kind of person she is, is victim impact testimony. All those things are calculated to prejudice or to inflame a jury, and I object to it, Your Honor.

Court: Your objection is sustained. Go somewhere else.

(JURY PRESENT)

State: ... How did you find out about her death?

Witness: I received a call from my mother.

State: The day she died, did the family have special plans for that day?

Witness: Yes.

Defense: Your Honor, excuse me. Your Honor, I know where this is going. This is going to—may we approach the bench again?

Court: Sure

(AT THE BENCH)

Defense: Judge, she is going to elicit evidence that it was Misty's son's birthday the next day. That is clearly victim impact testimony, Judge.

State: I just want to know if the date was the same date as the kid's birthday.

Court: You get there some other way. Let's go. Sustained.

(JURY PRESENT)

State: Was the date June 16th significant for some reason?

Witness: It was her son's second birthday.

Defense: Objection, Your Honor.

Court: Overruled.

State: I'm sorry, what was your answer?

Answer: It was her son's second birthday.

█ Following this testimony, the State showed two photographs of complainant to her mother for identification: one was taken at the autopsy, the other included complainant's son. When the State moved to publish the photographs to the jury and the trial court asked for objections, defense counsel responded, "Only what has been previously noted in the record." The trial court stated that the objection was overruled; the photographs were then admitted and published.[8]

█ Appellant asserts the State's questions elicited "victim impact" evidence and so were improper. Contrary to appellant's position, however, we do not view the recitation of basic facts surrounding how complainant's mother learned of her daughter's death and photographs of the victim to be "victim impact" evidence. Indeed, the evidence does not concern the physical, psychological or economic effect of the crime on complainant or her family; rather, it shows the witness properly fixed the date of the event in her mind and provides background information regarding the complainant. *See Matchett,* 941 S.W.2d at 931 (holding no victim-impact testimony where widow identified her husband through a photograph of him with friends and testified she was married to victim 25 years, had five children by him, and that victim was alone the night of his murder); *Lane,* 822 S.W.2d at 41 (holding no victim impact testimony where no evidence was given regarding the physical, psychological, or economic effect of the crime on victims or their families). Although the testimony may have had an emotional impact, we cannot conclude the trial court abused its discretion in admitting it. *See Davis v. State,* 68 S.W.3d 273 (Tex.App.-Dallas 2002, pet. ref'd).

█ Because the State's evidence does not constitute victim-impact evidence and because the trial court did not abuse its discretion in admitting it over appellant's objection, we overrule appellant's fourth point of error.[9]

---

**8.** The State points out that while appellant objected to the State's photographs based on an objection "previously noted on the record," there was in fact nothing in the record where appellant had objected to the photographs. Therefore, says the State, appellant's reference to a "previously noted" objection was in fact no objection and preserved nothing for review.

We are unpersuaded. Defense counsel objected three times to admission of the mother's testimony on the basis of its being "victim-impact" evidence. Because the photographs were admitted during the mother's direct examination, this court will interpret appellant's objections broadly to include the photographs.

**9.** Even if the evidence cited by appellant could be characterized as "victim impact" evidence, its admission was harmless because there was other testimony—*testimony not challenged by appellant*—that produced the same information. *See Ford v. State,* 919 S.W.2d 107, 117 (Tex.Crim.App.1996). Indeed, one of complainant's friends testified she spoke with appellant after the accident and he informed her complainant was "very happy" at the time of her death—"talking about her son's birthday party which was

## STATE'S CLOSING ARGUMENT

Appellant asserts in his fifth point of error that the trial court abused its discretion in overruling his objection to the State's closing argument during the guilt-innocence stage of trial that appellant had purposefully changed his story as to who was driving his vehicle at the time of the accident. We disagree.

### 1. Standard of Review

■ When reviewing alleged error in a jury argument, the appellate court must analyze the statement in light of the entire argument and not on isolated instances. *Drew v. State*, 743 S.W.2d 207, 220 (Tex.Crim.App.1987). In order to constitute reversible error, the argument must be extreme or manifestly improper, violative of a mandatory statute, or inject new facts harmful to the accused into the trial proceedings. *McKay v. State*, 707 S.W.2d 23, 38 (Tex.Crim.App.1985).

■ Any error in jury argument must be disregarded unless it "affects substantial rights." Tex.R.App. P. 44.2(b) (Vernon 2002); *see also Martinez v. State*, 17 S.W.3d 677, 692 (Tex.Crim.App.2000). A substantial right is affected when the error had a "substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1977). In determining whether improper prosecutorial jury argument is harmless, we must calculate as much as possible the probable impact of the error on the jury in light of the existence of other evidence. *Orona v. State*, 791 S.W.2d 125, 130 (Tex.Crim.App.1990).

■ In conducting this harm analysis, we consider the nature and source of the error, the degree the prosecutor emphasized the erroneous jury argument, proba-

ble collateral implications, how much weight a juror placed on the erroneous jury argument, and whether holding the improper jury argument harmless would encourage the State to repeat it. *Id.; Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim.App.1989).

### 2. Discussion

■ Proper jury argument includes four areas: (1) summation of the evidence presented at trial; (2) reasonable deductions drawn from that evidence; (3) responses to opposing counsel's argument; and (4) pleas for law enforcement. *Coble v. State*, 871 S.W.2d 192, 204 (Tex.Crim. App.1993); *Sanders v. State*, 25 S.W.3d 854, 858 (Tex.App.-Houston [14th Dist.] 2000, pet. dism'd). Counsel is allowed wide latitude without limitation in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex. Crim.App.1988). Indeed, prosecutors are entitled to come up with alternative theories to defendants' explanations of events so long as they can be fairly inferred from the evidence. *See Gaddis*, 753 S.W.2d at 399 (finding State's argument that defendant refused to give breath sample for fear that "the game would be over" was proper because there was evidence in the record appellant was intoxicated).

Here, the following exchange took place during the State's closing argument:

State: The defendant said he was the driver and now he wants to take it back. And he began that defense way back then ... saying "I was run off the road—I was driving but I was run off the

happening the next day." Because defense counsel did not object to this testimony, he

waived his right to complain of similar testimony elsewhere.

road?" Blame it on the other guy.

As time goes by, his attorney gets a hold of him. They realize that's not going to work because they can't get an expert to say the vehicle was struck. So, they can't stick with all the lies—

Defense: Judge, I'm going to object to the rather speculative nature of what is being argued at this point. At this point, it's outside the scope of the record.

Court: Objection is overruled.

State: The defendant can't change what everybody heard come out of his mouth. He can't change his blood alcohol was a 0.21. So, what's left? Well, nobody saw him driving, so blame it on the dead girl. That's what he does. It's as simple as that.

The State then goes on to urge the jurors to use their common sense in evaluating the evidence.

 Appellant asserts the argument above was improper and the trial court abused its discretion in overruling his objection to it. We disagree.

First, the State's argument was a reasonable deduction from the evidence and an answer to the appellant's closing argument; thus, it falls within permissible areas of jury argument. Second, the argument injects no new facts—indeed, it refers only to facts already in evidence, namely (1) that appellant initially stated he was run off the road by another vehicle and was the driver of the van; (2) that appellant's expert witness found no proof the van was struck by another vehicle; and (3) that appellant—in his closing argument—offered an explanation as to why he previously made different statements about being the vehicle's driver.

Because the State's argument was a summation of evidence presented at trial and offered a reasonable deduction drawn from the evidence, we find the trial court did not abuse its discretion in overruling appellant's objection.

Accordingly, we overrule appellant's fifth point of error.

## CONCLUSION

Having overruled all five of appellant's points of error, we affirm the trial court's judgment.