**William Joe RHOMER, Appellant**

**v.**

**The STATE of Texas, Appellee**

**No. 04-15-00817-CR**

Court of Appeals of Texas,
San Antonio.

Delivered and Filed: April 12, 2017

---

APPELLANT ATTORNEY: Dayna L. Jones, 1800 McCullough Ave, San Antonio, TX 78212.

APPELLEE ATTORNEY: Nathan Morey, 101 West Nueva, 3rd Floor, Suite 370, San Antonio, TX 78205.

Sitting: Sandee Bryan Marion, Chief Justice, Marialyn Barnard, Justice, Patricia O. Alvarez, Justice

## OPINION

Opinion by: Sandee Bryan Marion, Chief Justice

In the underlying criminal prosecution, appellant, William Rhomer, was indicted on three counts: felony murder, intoxication manslaughter, and manslaughter. All three counts stemmed from the same fatal vehicular collision between appellant's car and the decedent's motorcycle. The indictment contained an enhancement that appellant had been previously convicted as a repeat offender of the felony offense of driving while intoxicated. A jury found appellant guilty on all three counts and assessed punishment at seventy-five years' confinement. In its judgment, the trial court abandoned counts two and three and sentenced appellant to seventy-five years on only count one.

On appeal, appellant asserts the trial court erred in admitting the testimony of two police officers who testified about the accident. Detective John Doyle opined the accident happened because appellant drove into the decedent's lane of traffic. Officer Sean Graham testified he did not believe appellant's contention that Chavez drove into appellant's lane of traffic. Appellant contends Detective Doyle was not qualified to render an expert opinion on how the accident occurred and his testimony was not reliable. Appellant contends the trial court erred by allowing Officer Graham to offer his lay opinion because he had no background in accident reconstruction. Finally, appellant asserts the cumulative ef-

fect of these errors rendered his trial fundamentally unfair.

## THE ACCIDENT

There is no dispute that on the night of the accident appellant was driving his car on Colwick Street coming from the Coco Beach Bar, a few blocks west of the accident site. Colwick curves into and intersects with Nakoma Drive, and Nakoma has both eastbound and westbound lanes. Travelling from the bar, appellant turned from Colwick into the eastbound lane of Nakoma. The decedent, Gilbert Chavez, was travelling on his motorcycle in the westbound lane of Nakoma.

Mario Negron and Kenneth Ferrer testified they were driving their vehicle in the westbound lane of Nakoma when they came upon the accident at around 3:00 a.m. on May 2, 2012. They both testified they drove over pieces of metal on Nakoma. They stopped their vehicle at the accident scene, and both testified Chavez was breathing heavily and his body was contorted, with bones sticking out. Appellant also was at the scene, stumbling around. Appellant approached Negron and Ferrer, who were with Chavez, and said, "Oh, he looks ok." Appellant told two of the police officers at the scene that Chavez drove into appellant's lane of traffic. Appellant told one of the officers that Chavez "pulled out in front of" him, and that Chavez "had gone around him as if [Chavez] was travelling in the same direction as [appellant] and hit [appellant] on his right side...." Chavez was transported to a hospital where he died from his injuries. Dr. Randy Frost, the Bexar County Chief Medical Examiner, testified multiple traumatic blunt force injuries were the cause of death, and the injuries were consistent with an automobile accident.

## APPLICABLE LAW AND STANDARD OF REVIEW

Witnesses who are not experts may testify about opinions or inferences, but only when those opinions or inferences are rationally based on the perception of the witness and helpful to a clear understanding of the witness's testimony or the determination of a fact in issue. TEX. R. EVID. 701. An expert witness may offer an opinion if he is qualified by his knowledge, skill, experience, training, or education to do so and if scientific, technical, or specialized knowledge will assist the trier of fact in understanding the evidence or to determining a fact in issue. TEX. R. EVID. 702.

 The admissibility of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). An abuse of discretion occurs when the trial court acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

## DETECTIVE DOYLE'S TESTIMONY

San Antonio Police Detective John Doyle was dispatched to the scene of the accident where he observed a car that appeared to have crashed into the pillars of a building and a motorcycle in the parking lot. Doyle conducted a visual inspection of the accident scene and, based on the debris field and tire marks, he determined an area of impact between the two vehicles. Doyle measured the scene using a Sokkia instrument (a device also used for surveying), and created a scaled diagram showing all tire marks, evidence points, debris, and to calculate speed. However, in this case, Doyle said he did not calculate the speed of the vehicles because of the weight differential between the two vehicles and because appellant's car struck a

building. Based on the lack of tire marks on the street, Doyle stated there was no pre-impact braking by either vehicle. Doyle was able to identify debris from the motorcycle because he had seen "numerous motorcycle crashes." Doyle said he himself rides motorcycles. He did not believe EMS had moved any debris on the roadway, and had only moved the debris near where Chavez lay on the ground. Doyle also testified about the damage to the left side of the motorcycle and to the left side of Chavez's body.

Based on the debris left by the motorcycle after the collision, tire marks, curb strikes, the curvature of the road, and the final resting position of the motorcycle, car, and Chavez's body in the parking lot on the westbound side of Nakoma, Detective Doyle formed an opinion on how the collision occurred. According to Doyle

> [appellant] failed to negotiate the curve [as Colwick curved into Nakoma]. He basically straightened out the curve. And the complainant [Chavez] is going the opposite direction down the roadway. ... And [appellant] came into the path of the—the motorcyclist who is going this way, ... and [appellant] hit [Chavez] head-on, more or less.
>
> . . .
>
> It was more or less a direct head-on. The motorcyclist is leaning as he's coming into a corner. The way you take a turn on a motorcycle is you lean. Okay. He—he, I think, based on the location of that debris from the bumper right up there, I think at the—probably at about the last second [Chavez] shifted up to straighten the bike a little bit and the car hit him like that. . . . .

When asked if it was possible that Chavez left his westbound lane and entered the eastbound lane occupied by appellant, Doyle said "no ... [b]ecause of the debris, because of those scrape marks, [and] be-

cause of where the vehicles ended up." Doyle said that if Chavez had been in appellant's lane, Chavez's body would not have landed in the parking lot, which was on the westbound side. When asked if appellant's statement that Chavez came up behind appellant and hit appellant's car on the right side was consistent with the evidence at the scene, Doyle stated, "Absolutely not, not with the damage on the car, not with the damage on the motorcycle, and not with the location of the body, the motorcycle and the car in relation to each other." Doyle stated that, based on the debris and where the vehicles and Chavez's body finally came to rest, Chavez "was on his side of the road, in his lane." Doyle also noted there was no debris in appellant's lane.

On appeal, appellant asserts the trial court erred by allowing Detective Doyle to testify as an accident reconstruction expert because he was not qualified and because his testimony was not reliable. Appellant's specific complaints about Doyle's qualifications are that Doyle agreed motorcycle reconstruction was different from vehicle reconstruction, he had no training or special education involving motorcycle accident reconstruction, and a collision involving a motorcycle involved different physics, and different scientific and mathematical principals. Appellant also asserts Detective Doyle's opinion was not reliable because he had no training in reconstructing a motorcycle accident and he applied no scientific theory to reconstruct the accident.

## A. Detective Doyle's Qualifications as an Expert

 As the party offering Detective Doyle's expert testimony, the State had the burden to show he was qualified on the specific matter in question. *Penry v. State*, 903 S.W.2d 715, 762 (Tex. Crim. App.

1995). The question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion. *Id.* Absent a clear abuse of that discretion, the trial court's decision to admit or exclude testimony will not be disturbed. *Id.*

 Generally, police officers are not qualified to render expert opinions regarding accidents based on their position as police officers alone. *DeLarue v. State*, 102 S.W.3d 388, 396 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). However, police officers are qualified to testify regarding accident reconstruction if they are trained in the science about which they will testify and possess the high degree of knowledge sufficient to qualify as an expert. *See Chavers v. State*, 991 S.W.2d 457, 460–61 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd); *see also DeLarue*, 102 S.W.3d at 396 ("Accident analysts and reconstruction experts may be qualified to testify as to the cause of an accident if they are highly trained in the science of which they testify."). The specialized knowledge that qualifies a witness to offer an expert opinion may be derived from specialized education, practical experience, a study of technical works, or a varying combination of these things. *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). No definite guidelines exist for determining whether a particular witness possesses the knowledge, skill, or expertise to qualify as an expert. *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 892 (Tex. App.—Texarkana 2004, pet. denied) (citing to cases allowing or disallowing police officers to testify as experts). While a police officer may possess sufficient knowledge, skill, or expertise for one case, another case might require a greater degree of expertise. *Lopez-Juarez v. Kelly*, 348 S.W.3d 10, 21 (Tex. App.—Texarkana 2011, pet. denied). "Whether a police officer is qualified depends on the facts of each case." *Id.*

In this case, at the time of the accident, Detective Doyle was assigned to the night traffic investigations detail, which handles fatality crashes, alcohol-related crashes, serious bodily injury crashes, and failure-to-stop-and-render-aid crashes. He had been with the San Antonio Police Department for twenty-three years. Doyle was promoted to the rank of detective in 2000.

Doyle stated that, in late 2003 or early 2004, he attended and was certified in a 133-hour intermediate crash investigation course in which he was taught "skid-to-stop" formulas, how to draw a diagram, how to measure a scene, and other basics of crash investigation. He later attended an eighty-hour advanced crash course, taught at Texas A&M University. Doyle said the advanced course taught, in part, how to conduct "an energy analysis" to calculate speed. He said energy analysis involved the application of physics. Doyle also attended a reconstruction course. According to Doyle, the combination of these three courses gave him the ability to reconstruct a scene based on speed calculations or energy analysis.

Doyle also received specialized training in a motor-vehicle-pedestrian course. He described this course as involving the center of gravity and how the different angles of vehicles affects what happens to a pedestrian when a vehicle strikes him. Doyle said, "it's all about speed [but] a little bit trickier because you have the car, the person, [and] their center of gravity...." However, Doyle admitted he had no training in motorcycle reconstruction, and he was not aware of such a course being offered in Texas. He stated motorcycle reconstruction was somewhat similar to a reconstruction involving pedal cyclists with the exception that the mass of a bicycle is different from the mass of a motorcycle,

but the heightened center of gravity of the riders "is very similar." He agreed there were "different physics, different science, [and] different mathematical principles" involved when reconstructing a collision between two cars versus a collision between a car and a motorcycle. However, according to Doyle, "there are distinct similarities" between a car/motorcycle collision and a car/bicycle collision, and he had received training in bicycle and pedestrian crashes. Doyle stated he had investigated at least a thousand vehicular crashes in his career, although he did not state the type of crashes. He has testified once as an accident reconstruction expert in an intoxication manslaughter case that involved two cars and a pickup truck.

We must decide whether Detective Doyle possessed the specialized knowledge—based on his training and experience—to offer an expert opinion on the point of impact in this accident when the accident involved a collision between a car and a motorcycle. Although Doyle admitted he had not taken any accident reconstruction course that involved motorcycles and he admitted different physics/scientific/mathematical principles were involved, Doyle also testified motorcycle reconstruction was somewhat similar to a reconstruction involving pedal cyclists because the heightened center of gravity of the riders "is very similar." He also stated, "there are distinct similarities" between a car/motorcycle collision and a car/bicycle collision, and he had received training in bicycle and pedestrian crashes. This accident involved only two vehicles, one hitting the other, and the disputed issue was in which lane the accident occurred—Chavez's lane or appellant's lane. Doyle possessed the practical experience and specialized training to measure the accident scene using a Sokkia instrument; create a scaled diagram showing all tire marks, curb strikes, curvature of the road, and debris; and identify the debris left by the motorcycle and the car, and the damage to the motorcycle and Chavez's body. Based on this experience and training, Doyle formulated a conclusion that the point of impact occurred in Chavez's lane of traffic. We conclude, on this record, the trial court did not abuse its discretion in determining Detective Doyle was qualified to offer an expert opinion on this issue.

## B. Reliability of Detective Doyle's Expert Opinion

When an expert's opinion is based on a hard science, the proponent of the expert must satisfy the test set forth in *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992). *Morris v. State*, 361 S.W.3d 649, 654 (Tex. Crim. App. 2011) ("When the subject of an expert's testimony is 'scientific knowledge,' then the basis of that testimony must be grounded in the accepted methods and procedures of science."). The *Kelly* test for reliability of evidence derived from a scientific theory requires that (1) the underlying scientific theory be valid, (2) the technique applying the theory be valid, and (3) the technique must have been properly applied on the occasion in question. *Kelly*, 824 S.W.2d at 573. However, expert testimony need not be based on science. *Morris*, 361 S.W.3d at 654. "[B]y its terms, Rule 702, by applying to 'technical or other specialized knowledge,' permits even nonscientific expert testimony." *Id.*

Recognizing the flexible nature of a Rule 702 inquiry, the Court of Criminal Appeals set forth a framework for evaluating the reliability of expert testimony in fields of study outside the hard sciences in *Nenno v. State*, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998) (stating specific factors relating to determination of reliability "may or may not apply depending on the

context"), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720 (Tex. Crim. App. 1999). The *Nenno* test asks whether (1) the field of expertise is a legitimate one, (2) the subject matter of the expert's testimony is within the scope of that field, and (3) the expert's testimony properly relies upon and/or utilizes the principles involved in the field. *Nenno*, 970 S.W.2d at 561. In employing the *Nenno* framework, the Court of Criminal Appeals "explicitly refrained from developing rigid distinctions between 'hard' science, 'soft' sciences, and nonscientific testimony because [the Court] recognized that the distinction between various types of testimony may often be blurred." *Morris*, 361 S.W.3d at 654-55.

 Appellant's sole complaint regarding whether Detective Doyle's testimony was reliable is that he applied no scientific theory to reconstruct the accident and he had no training in motorcycle accident reconstruction. Therefore, it appears appellant relies solely on the *Kelly* test. However, we are not persuaded that *Kelly* should be applied in this case, rather than *Nenno*.

When a scientific inquiry such as speed is a disputed issue, appellate courts in this state are not consistent. Some courts have applied *Kelly*. *See Wooten v. State*, 267 S.W.3d 289, 303-04 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) ("Officer Tippy's testimony addressed the three criteria of the *Kelly* test in explaining how he calculated appellant's speed by using a drag sled."); *Pena v. State*, 155 S.W.3d 238, 246 (Tex. App.—El Paso 2004, no pet.) ("testimony concerning the speed at which Appellant was driving at the time of impact, is a type of scientific evidence subject to *Kelly* requirements for admissibility"); *DeLarue*, 102 S.W.3d at 398. On the other hand, at least one court has applied both the *Kelly* test and the *Nenno* test when

speed was an issue. *See Chavers*, 991 S.W.2d at 460.

In this case, speed was not an issue, Detective Doyle did not calculate speed, and there is no contention on appeal that a speed calculation was necessary for Doyle to arrive at his opinion. Instead, Doyle arrived at his opinion that the accident occurred because appellant drove into Chavez's lane of traffic based on the location of the debris in Chavez's lane; no debris in appellant's lane; the location of scrap marks; the damage to both vehicles; and the relationship between the resting place of the vehicles and Chavez's body. In other words, Detective Doyle based his opinion on what he observed at the scene and the conclusions his training and experience allowed him to draw from his observations.

The *Nenno* Court noted that

[w]hen addressing fields of study aside from the hard sciences, such as the social sciences or fields that are based primarily upon experience and training as opposed to the scientific method, *Kelly*'s requirement of reliability applies but with less rigor than to the hard sciences. To speak of the validity of a "theory" or "technique" in these fields may be roughly accurate but somewhat misleading. The appropriate questions are: (1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field. These questions are merely an appropriately tailored translation of the *Kelly* test to areas outside of hard science. And, hard science methods of validation, such as assessing the potential rate of error or subjecting a theory to peer review, may often be inappropriate

for testing the reliability of fields of expertise outside the hard sciences.

*Nenno*, 970 S.W.2d at 561.

We believe, in the context of this accident, the *Nenno* test is the appropriate test to apply because Doyle's accident reconstruction was not dependent upon a scientific inquiry (such as the speed of a vehicle) and was based on his experience and training. As we have already noted, Detective Doyle reached his opinion based on his experience and specialized training. Therefore, in this case, we conclude (1) the field of accident reconstruction is a legitimate one, (2) the subject matter of Detective Doyle's expert testimony was within the scope of that field, and (3) his testimony properly relied upon and/or utilized the principles involved in the field. *See id.* Accordingly, we conclude the trial court did not abuse its discretion by finding Detective Doyle's expert opinion to be reliable.

## OFFICER GRAHAM'S TESTIMONY

San Antonio Police Officer Sean Graham also was dispatched to the scene of the accident. Graham testified that no one with whom he spoke witnessed the accident and he could not remember whether he obtained anyone's name or information. Officer Graham said Chavez was lying on the ground on his back, there was blood around Chavez's head, his legs appeared broken, and he was unresponsive. Graham also identified appellant as the driver of the car. After speaking with appellant, Graham concluded appellant was intoxicated. Graham said appellant told him that Chavez "ran into him." Graham said he did not believe appellant's account of how the accident occurred based on what Graham observed at the crash scene. Graham, who has been a San Antonio patrol officer for fourteen years, admitted he was not qualified to perform accident re-

constructions. However, he said he regularly writes crash reports as a patrol officer and he had been trained for many years to investigate and document a crime scene. When asked generally what he looks for when writing a crash report, Graham responded: "Looking at the—the impact of the vehicles or the statements of the—the persons involved in a crash and any kind of signs of—on the roadway that might indicate what happened." When asked whether he had any idea how this accident occurred, Graham responded, "Just my opinion of it, sir."

On appeal, appellant asserts the trial court erred by allowing Officer Graham to testify as an accident reconstruction expert because he was not qualified to offer an accident reconstruction opinion.

"A distinct line cannot be drawn between lay opinion and expert testimony because all perceptions are evaluated based on experiences." *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). Generally, observations that do not require significant expertise to interpret and are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met. *Id.* "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." TEX. R. EVID. Rule 701. "Perceptions refer to a witness's interpretation of information acquired through his or her own senses or experiences at the time of the event (i.e., things the witness saw, heard, smelled, touched, felt, or tasted)." *Osbourn*, 92 S.W.3d at 535. Because Rule 701 requires the testimony to be based on the witness's perception, the witness must personally observe or experience the events about which he or she is testifying. *Id.* "Thus, the

witness's testimony can include opinions, beliefs, or inferences as long as they are drawn from his or her own experiences or observations. This also incorporates the personal knowledge requirement of Rule 602 which states that a witness may not testify to a matter unless he or she has personal knowledge of the matter." *Id.*

 "Additionally, even events not normally encountered by most people in everyday life do not necessarily require the testimony of an expert. The personal experience and knowledge of a lay witness may establish that he or she is capable, without qualification as an expert, of expressing an opinion on a subject outside the realm of common knowledge." *Id.* at 537. "However, not all observations by witnesses with experience and training can be admitted as lay opinion testimony." *Id.* "It is only when the fact-finder may not fully understand the evidence or be able to determine the fact in issue without the assistance of someone with specialized knowledge that a witness must be qualified as an expert." *Id.*

In this case, Graham observed a vehicle that had driven into a building, a motorcycle in a parking lot, and several people surrounding a man lying on the ground. Both vehicles were in a parking lot adjacent to the westbound lane of Nakoma. He said appellant told him he was on Colwick coming from the Coco Beach Bar, and appellant turned from Colwick into the eastbound lane of Nakoma. Graham said the accident debris was all located in the lane opposite from the lane where someone would be driving from the bar. In other words, the debris was in the westbound lane of Nakoma, Chavez was travelling in the westbound lane of Nakoma, and appellant was in the eastbound lane.

Officer Graham based his opinion on his observation of the location of the accident debris in Chavez's westbound lane and his knowledge that appellant was travelling in the eastbound lane. Although Graham admitted he was not qualified to perform accident reconstructions, he stated he regularly writes crash reports as a patrol officer and had received years of training on how to investigate and document a crime scene. On this record, we conclude the trial court did not abuse its discretion by allowing Officer Graham to testify he did not believe appellant's version of how the accident occurred.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.