COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





ALONDRA DEANTIA REAGAN,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-05-00381-CR



Appeal from


 291st District Court


of Dallas County, Texas


(TC # F-0471278-VU)




O P I N I O N



 Alondra Deantia Reagan appeals his conviction of the aggravated sexual assault of his niece.
The jury sentenced Appellant to ten years' confinement in the Institutional Division of the Texas
Department of Criminal Justice. We affirm.

FACTUAL SUMMARY


 Appellant is the uncle of the complainant, Tawanna Jackson. Because many family members
will appear in our discussion, we identify them here. Tawanna's parents are Latonya Jackson and
John Husband. Her maternal grandmother is Zephyr Louise Jackson. Leah Showers is Latonya's
sister. John Husband has two sisters, Mary Reagan (Appellant's wife), and Celeste Husband.

 In the summer of 2003, Tawanna was thirteen years old. She moved in with her Aunt Celeste
in June and stayed for about three weeks. At that point, Celeste called Appellant, complained about
Tawanna, and asked him to come for her. By early July, Tawanna was living with Aunt Mary and
Appellant. During this time, Appellant began sexually assaulting Tawanna. Tawanna told Officer
Jeffrey Loeb that the offenses occurred multiple nights over the course of the summer. At trial, she
testified the assaults occurred in "the kids' room," but she could not remember how many times it
happened.

 The police were not notified of the assault until December 2003. Tawanna was spending the
night with her grandmother. Suspecting Tawanna was pregnant, the grandmother called Aunt Leah
who picked up Tawanna and took her to the Showers' home. Tawanna explained what had happened
and that she was pregnant. She had not told anyone because she did not think they would believe
her and she did not want Aunt Mary to be upset. Mary was pregnant with Appellant's child at the
time. Leah called Tawanna's father and the police.

 Tawanna was taken to Parkland Memorial Hospital and to the Dallas Children's Advocacy
Center, where she was interviewed by Irish Burch. The interview was witnessed by Detective
Michael Kemp. Tawanna identified Appellant as the perpetrator. She gave birth to a son, Jakobi,
on April 1, 2004. Tawanna testified at trial that she did not know who Jakobi's father is. Kimberlee
Allen, a forensic biologist, testified there was a greater than 99.99 percent chance that Appellant is
Jakobi's father.

 In November 2004, Tawanna went with her father to Appellant's attorney's office to recant
her allegations. During cross examination at trial, she testified:

 Q: You say, 'I didn't want my father to know about my baby's father so I made
up these lies against Reagan to protect my baby's daddy from my father.' Is
that what you say?


 A: I guess.


 Q: It's right there, isn't it?


 A: If you say so.


 Q: Okay. Did you not say these things back on November 17th, 2004?


 A: Yes.


 Q: It's in your writing there, isn't it?


 A: Uh-huh.


 Q: And you say there, 'I'm very sorry and I'm writing this in my own words and
in the presence of my father.' Is that right?


 A: Uh-huh.


. . .



 Q: What you have essentially said back in November of 2004 was different from
what you told the jury here today; is that right?


 A: Yes. 


She explained that her reference to "baby daddy" meant her boyfriend, Willie Bingham. But
Tawanna also testified that she didn't meet Willie until August 2004, after Jakobi was born. 

 I said it was Willie even though it wasn't because at the time I didn't know who it
was. So me and Willie had told his mama and my mama that he was Jakobi's daddy.


On re-direct, Tawanna was asked about recanting the allegations.


 Q: Did you feel pressure that you needed to say the defendant didn't do that to
you?


 A: No.


 Q: Why did you do it then?


[Objection lodged and overruled.]



 Q: Why did you do it, Twanna [sic]?



 A: Because I feel [sic] that I didn't -- I didn't want my cousin to grow up without
a father.


 Appellant testified on his own behalf and denied the sexual assault. By bill of exception, he
presented his defensive theory: Aunt Celeste wanted Tawanna to leave her home because she was
promiscuous. Tawanna had been caught having sexual relations with Willie in Celeste's home. 
Tawanna moved into the Reagans' home in early July. Appellant's nephew, T.D. Williams, had
spent a week in the home while Tawanna was there. Appellant had caught them engaging in sexual
relations and told his wife, Mary, who in turn told her brother. As a result, Williams was asked to
leave. Appellant explained that because of a "falling out" with Tawanna, she too left his home in
August 2003. But according to Appellant, this dispute involved Willie and had nothing to do with
Williams. 

 Q: What is her motive for bringing this accusation against you, if you know?


 A: Because of Willie. When she was down Celeste house -- when Celeste called
down to my house she called and talked to me. She talked to my wife about
it. She called me down there. Come get Twanna [sic] because Twanna [sic]
-- when she came home from work Twanna [sic] was -- was having sex with
Willie and Anthony Husband (1) had caught her having sex.


 So I went down there and I was talking to her and she was all crying,
whatever, and Celeste told me to inform her daddy and grandpa who
she stays with now. She didn't want none of that to occur. 


According to Appellant, the biological relationship between Appellant and Williams explained the
DNA testing results.

 The trial court excluded other testimony pertaining to Williams. Detective Michael Kemp
of the Dallas Police Child Abuse Unit testified that his police report reflects a second suspect by the
name of T.D. Williams. He had not been able to locate Williams and had not interviewed him, but
an open case was pending against him. Tawanna confirmed to Detective Kemp that she had had
sexual relations with Williams three times during the week Williams was in the Reagans' home. 
Kemp also knew that Appellant and Williams were related. The court then questioned the witness:

 Q: When did the complainant allege to which -- I don't know if it's
consentual [sic] sex or non-consentual [sic] sex with T.D.


 A: She said the first time she has consentual [sic] sex --


 Q: In relation to contact with the defendant was it before, after or during?


 A: I'm not sure I understand what you're asking me, Judge.


 Q: Did the allegations that the complainant made against T.D., was that the same
time that the allegations were made against the defendant in this case?


 A: Yes.


 Q: You have an open investigation?


 A: Yes, I do.


 Q: You have not proved those allegations to be false at this time?


 A: I have not.


The jury did not learn of Tawanna's involvement with Williams, that Williams was a suspect, or that
a close relative of Appellant had had sexual intercourse with Tawanna during the time that Appellant
allegedly assaulted her. The jury heard Appellant's denial of the assault and that the DNA testing
was a mistake. T.D. Williams was mentioned to the jury once:

 Q: Did she ever have anybody visit her at your house?


[Objection lodged and overruled.]



 A: Yes.


 Q: Who would that have been?


 A: Terrence Williams, T.D.


 Q: T.D. Williams visit her at your house?


 A: Yes, sir.


 Q: How old a man is T.D. Williams?


[Objection lodged and sustained.]



The jury then heard -- "without going into why" -- that Appellant had a "falling out" with Tawanna,
that she left the home, and that within a "couple months" these allegations were made.

 In five issues for review, Appellant complains of evidentiary error and a violation of his due
process rights. Simply stated, Appellant contends he was wholly precluded from pursuing his
defensive theory. 

EVIDENTIARY ERROR


 Evidence of specific instances of an alleged victim's past sexual behavior is not admissible
in a prosecution for aggravated sexual assault unless it is evidence: 

 (A) that is necessary to rebut or explain scientific or medical evidence offered by the
State;


 (B) of past sexual behavior with the accused and is offered by the accused upon the
issue of whether the alleged victim consented to the sexual behavior which is the
basis of the offense charged;


 (C) that relates to the motive or bias of the alleged victim;


 (D) is admissible under Rule 609; or


 (E) that is constitutionally required to be admitted. 


Tex.R.Evid. 412(b)(2)(A-E). Before it can be admitted, the probative value of the testimony must
outweigh the danger of unfair prejudice. Id. The trial court excluded the evidence in question based
on Rule 412.

Standard of Review


 A trial court's evidentiary decision is reviewed for an abuse of discretion. See Page v. State,
213 S.W.3d 332, 337 (Tex.Crim.App. 2006). When the trial court acts without reference to any
guiding rules or principles, the court abuses its discretion. Montgomery v. State, 810 S.W.2d 372,
379-80 (Tex.Crim.App. 1990). The mere fact the trial court may decide an evidentiary matter
differently than an appellate court would does not render the ruling an abuse of discretion. Id. We
will not reverse a trial court's ruling if it was within the zone of reasonable disagreement. Id. at 391.

Motive


 In his first issue, Appellant complains that the trial court improperly excluded his testimony 
regarding Tawanna's motive to testify falsely. In his brief, he argues that her motive was retaliation
against him because he told her parents about Williams. But as we have detailed, Appellant plainly
testified in the bill of exception that her motive was solely based on boyfriend Willie and not cousin
Williams.

 Hearsay is "a statement, other than one made by the declarant while testifying at the trial or
hearing, offered in evidence to prove the truth of the matter asserted." Tex.R.Evid. 801(d).
Appellant's testimony was hearsay since it was based upon information relayed from Celeste. 
Therefore, the trial court properly excluded his testimony. Kennedy v. State, 184 S.W.3d 309, 315
(Tex.App.--Texarkana 2005, pet. ref'd)(Texas Rule of Evidence 412 cannot be used as a vehicle to
get otherwise inadmissible hearsay before the jury.).


Scientific Evidence


 Appellant also contends the trial court erred in excluding testimony that he caught the
complainant and Williams having sex. He suggests this testimony would rebut the scientific
evidence presented by the State. According to Appellant, forensic biologist Kimberlee Allen was
unaware that another blood relative was alleged to have had sexual relations with the complainant. 
There was no DNA sample taken from Williams to link him to Jakobi.

 Evidence is relevant if it has the "tendency to make the existence of any fact that is of
consequence to the determination of the action more probable or less probable than it would be
without the evidence." Tex.R.Evid. 401. Evidence that is not relevant is inadmissible. 
Tex.R.Evid. 402. The mere fact the complainant may have had intercourse with Appellant's
nephew does not rebut the scientific proof provided by the State showing a probability of greater than
99.99 percent that Appellant fathered Tawanna's child. More importantly, paternity of Jakobi does
not bear on Appellant's guilt. The fact that Williams may have fathered Jakobi doesn't mean that
Appellant didn't sexually assault Tawanna. We overrule Issue One.

The Complainant


 Appellant's second issue is not clearly briefed. However, we construe his argument as stating
the trial court erred in preventing him from cross-examining Tawanna about her sexual relationship
with Williams because it related to her motive or bias.

 Appellant was allowed to cross examine Tawanna about recanting her allegations. She never
mentioned Williams, and defense counsel never asked her about Williams. There is no offer of proof
or bill of exception indicating Williams had anything to do with her allegations about Appellant or
the various stories she told about Jakobi's paternity. This issue is not preserved for our review. 
Tex.R.App.P. 33.1; Tex.R.Evid. 103(a). Moreover, the record does not support Appellant's
contentions that Tawanna's motive to falsely accuse him was based on Williams. To the contrary,
she said she lied to protect her boyfriend, Willie. We overrule Issue Two. 

Police Detective


 Appellant's third issue involves his right to cross-examine Detective Kemp about Williams. 
Outside the presence of the jury, Detective Kemp testified Williams was a second suspect in the case
and the complainant confirmed she had sex with him three times during the week he had stayed in
Appellant's home. Detective Kemp had been unable to locate Williams, but the case against him
remained open.

 Appellant argues, "[the complainant] admitted to having sex with the Appellant's blood
nephew to Detective Kemp, what better way to protect T.D. than to blame someone who betrayed
her by disclosing that fact to her parents?" As we have said, the record does not support Appellant's
contentions that Tawanna's motive to falsely accuse him was based on Williams. To the contrary,
she said she lied to protect her boyfriend, Willie. And Appellant himself testified that her motive
was solely based on Willie, not Williams.

 Since the trial court did not abuse its discretion in excluding this testimony, we overrule Issue
Three.

Forensic Biologist


 The fourth issue relates to the testimony of the State's forensic biologist, Kimberlee Allen. 
Allen explained her DNA comparisons between the buccal swabs received from Tawanna, Jakobi,
and Appellant. The probability that a randomly selected individual from the Caucasian, African
American, and Southwest Hispanic population would be excluded as a possible biological father is
greater than 99.99 percent. From the paternity index statistic, it is 466,000 times more likely that
Appellant is the biological father versus a randomly selected individual. Finally, there is as a greater
than 99.99 percent probability that Appellant is Jakobi's father.

 Outside the presence of the jury, Allen testified that if she had received a buccal swab from
Williams, she would have compared his DNA with the paternity genetic markers found in the child's
buccal swab standard. If Williams could not be excluded, then a statistical calculation would have
been performed. If Williams were included as a possible biological father, it probably would not
significantly change the statistics. Allen also stated a kinship analysis would have to be conducted
and there may be a slight change in the statistics because Williams is a close biological relative. (2) 

 Allen also testified that if there were allegations that Williams had sexual relations with
Tawanna at the same time, it would not affect the numbers she calculated. "There was only one
child made so those paternity genetic markers as far as I can tell were contributed -- possibly
contributed by the defendant."

 Q: If you had the additional information that this mother had sex with a relative
of who you have determined to be the father, would that in any way change
your probability statistics regarding the probability that this person, this
defendant, is the father of the child?


 A: No, but if you -- also in the report where it talks about probability of paternity
there is a paragraph that says we don't consider non-genetic information. 
And somebody telling me that this complainant might have had sexual
relations with a relative of the defendant is irrelevant to our analysis that we
would do. We would consider that information non-genetic information. We
really don't care about that. 


 Allen's testimony was properly excluded because it was both speculative and mere
conjecture. No analysis was conducted using Williams' DNA. Thus, Allen's testimony is not based
on facts but rather on the assumption that Williams' DNA evidence could be linked to the child. 
Even if Williams had sexual encounters with the complainant, Allen testified it would not have
affected the testing she conducted on Appellant's DNA which, included a greater than 99.99 percent
probability he was the biological father. Bluntly stated, the fact Tawanna may have had sexual
relations with Williams was irrelevant to Allen's analysis. Because this evidence was speculative,
mere conjecture, and irrelevant, the testimony was properly excluded. See Tex.R.Evid. 402; see
also DeLarue v. State, 102 S.W.3d 388, 396 (Tex.App.--Houston [14th Dist.] 2003, pet. ref'd)
(expert testimony cannot be based upon mere guess or speculation, but must have proper factual
basis; opinions which are purely speculative or conjectural should be excluded). Issue Four is
overruled.

DUE PROCESS


 In his fifth issue, Appellant argues the cumulative evidentiary error violated his due process
rights because it denied him the opportunity to present his only defensive theory. But Appellant
never raised a due process complaint in the trial court.

 To preserve error on appeal, the complaining party must make a timely, specific objection
and obtain a ruling on the objection. See Tex.R.App.P. 33.1(a); see also Broxton v. State, 909
S.W.2d 912, 918 (Tex.Crim.App. 1995). The point of error on appeal must also comport with the
objection made at trial. Broxton, 909 S.W.2d at 918. Even constitutional errors may be waived on
appeal. Id. (Defendant waived due process claim that he was denied right to present his defense
because he failed to object at trial on those same grounds.). Even if Appellant had properly
preserved the issue for our review, the trial court did not err in the evidentiary rulings. See c.f. Potier
v. State, 68 S.W.3d 657, 665 (Tex.Crim.App. 2002)(even erroneous exclusion of relevant evidence
was not constitutional error because the exclusion did not prevent the defendant from presenting a
defense). Indeed, defense counsel effectively argued the issue: 

 She comes in and says it happened and then she comes to my office, signed a sworn
statement that it didn't happen. 'Why did you do that?' 'I was trying to protect my
baby's daddy.' He was going to tell who the father was to her father, John Husband. 
'Is that why you brought these allegations against him?' 'Yes.' That's the motive,
folks, to protect her boyfriend or baby's daddy, whoever he was, to protect him. 
Does that raise a reasonable doubt in your mind?


We overrule Issue Five. Having overruled all issues for review, we affirm the judgment of the trial
court.


May 10, 2007 

 ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. The record does not indicate Anthony's relationship to Tawanna.
2. Allen testified she had never personally done a kinship analysis but that it could be performed.