**Affirmed and Majority and Concurring Opinions filed March 28, 2013.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-11-00440-CR

### JACKIE LEE HALEY, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 25th District Court
Colorado County, Texas
Trial Court Cause No. 10-118-CR**

## CONCURRING OPINION

I respectfully concur. I agree in all regards with the majority's analysis of Issues Nos. 1 and 3–6. I agree with the disposition of the cause. However, with regard to Issue No. 2, I would hold that the admission of the State's expert testimony (Logan) was error, but harmless error.

### I. IT WAS ERROR TO ADMIT THE OPINIONS OF THE STATE'S EXPERT BARRY LOGAN, PH.D.

The State presented Barry Logan, Ph.D. as an expert witness. Dr. Logan

opined that appellant "was under the influence of and affected by his methamphetamine use *at the time that he was involved in this crash*."

The majority opinion characterizes the methodology used by Dr. Logan to reach this opinion as (1) comparing data on subjects known to have methamphetamine in their blood whose data became known to Logan because they were arrested or injured, or fatally injured another; and (2) correlating the relationship between the level of methamphetamine found and the circumstances of the incident that brought the subject to his attention. Actually, that was Dr. Logan's methodology for his case studies, not for formulating opinions in this case.

To formulate his opinion, Dr. Logan used one piece of information about appellant: appellant's blood concentration of methamphetamine. Dr. Logan compared appellant's blood concentration of methamphetamine with the ***average*** blood concentration of the study subjects. Of note, appellant's blood concentration fell within the range of blood concentration of Dr. Logan's study subjects (.01–2.24); it was higher than the average.

Other than comparing appellant's blood concentration to the average of the studies he conducted or was aware of, Dr. Logan made no effort to show that appellant was similar in any way to the subjects studied. Dr. Logan himself conceded that nothing in the available "scientific data" would allow him to testify about the specific effects that appellant would have been experiencing as a result of methamphetamine. There is no threshold above which blood concentration of methamphetamine is generally accepted to affect behavior or driving behavior. Dr. Logan was nevertheless willing to give the opinion that appellant had to be affected because his concentration was so far above what is considered a therapeutic range. In short, Dr. Logan's methodology is a guess—an educated

2

guess, but a guess.

Applying these facts to law, then, Dr. Logan's methodology for converting appellant's .8 blood concentration of amphetamine into an opinion about the effects of that amphetamine on appellant at the time of the crash fails significant *Kelly* factors:

- There is no evidence that the methodology is accepted in the scientific community. Even Dr. Logan testified that it is difficult to correlate specific effects with blood concentration. Nothing in Dr. Logan's testimony about his case studies supports a *per se* correlation between concentration of methamphetamine and effects on driving.

- There is no evidence that the methodology is supported by the literature. The literature discussed at trial memorializes case studies—observational studies of known positive methamphetamine and known illegal driving behavior—to determine whether there is a relationship. There are no control groups and few study subjects who tested positive for methamphetamine alone, as appellant did. Nothing in the studies or the literature discussed at trial endorses Dr. Logan's methodology for comparing dissimilar subjects with known criteria to appellant.

- There is no evidence that the methodology is capable of having a rate of error; Dr. Logan acknowledges that his case studies have no rate of error.

*See Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

Further, Dr. Logan's opinion about appellant that related back to *the time of the crash* is fundamentally flawed because it is not founded on any information about time of ingestion, height, weight, absorption, elimination, time of crash, or time of blood test. *See Mata v. State*, 46 S.W.3d 902, 909 (Tex. Crim. App. 2001) (describing retrograde extrapolation as the method to estimate a level of blood-alcohol at the time of driving based upon a computation of absorption derived from, among other things, contents of food in the stomach, gender, height, weight, amount consumed, and time of consumption); *see also DeLarue v. State*, 102

3

S.W.3d 388, 401 (Tex. App.—Houston [14th Dist.] 2003, pet ref'd) (holding it was error to admit "marijuana evidence as it related to appellant's intoxication and resultant behavior" where the State did not quantify the presence of marijuana, show when the marijuana was introduced into his system, show he was "under the influence" at the time of the accident, or show causation between appellant's behavior and the presence of marijuana).

In summary, Dr. Logan could not and would not opine about *how* the methamphetamine affected appellant. But as to *whether* appellant was affected by the methamphetamine, the essence of Dr. Logan's opinion was, "How could he not be?" That is not a scientific opinion.

## II. THE ERROR IN ADMITTING DR. LOGAN'S TESTIMONY WAS HARMLESS

Under Rule 44.2(b) of the Texas Rules of Appellate Procedure, we review the trial court's erroneous evidentiary rulings for harm, disregarding non-constitutional errors that do not affect the defendant's "substantial rights." TEX. R. APP. P. 44.2(b). We may not reverse for non-constitutional error if, after examining the record as a whole, we have fair assurance that the error did not have a substantial and injurious effect or influence in determining the jury's verdict, or had but a slight effect. *See Casey v. State*, 215 S.W.3d 870, 885 (Tex. Crim. App. 2007); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

I would conclude that we have fair assurance that this error did not have a substantial and injurious effect or influence in determining the jury's verdict. The record as a whole leaves no doubt that Dr. Logan's testimony, at most, had a slight effect on the jury's verdict.

Appellant was indicted for manslaughter, recklessly causing the death of the three victims "while driving eastbound on the Interstate 10 freeway after ingesting

4

methamphetamine and fail[ing] to properly control his vehicle." Initially, appellant testified that he ingested an unknown synthetic substance[1] to allow him to stay awake and drive all night. However, appellant later acknowledged that he did not say anything to the doctor at the emergency room about the unknown substance because he knew he was on methamphetamine. And the hospital records confirm that appellant tested positive for amphetamine.

The jury also heard that appellant had a prior conviction for a methamphetamine-related offense. In fact, they saw the judgment for that offense: conspiracy to manufacture and distribute methamphetamine.

The toxicologist testified about the generally-accepted effects of methamphetamine; that is, the initial stimulant effect of the drug and the subsequent depressant effect. She also testified about the characteristics ordinarily exhibited by someone in each of these phases. The toxicologist testified that accepted therapeutic levels of methamphetamine are .02 to .05 mpl and that anything above that level is considered "abusive." Finally, she testified that she tested appellant's blood and found a concentration of .8 mpl.

It was undisputed that appellant caused the crash when he veered out of his lane at 65 miler per hour, crossed the median, and drove into oncoming cars. Eyewitnesses described the event and the lack of a precipitating obstacle in the road. They also indicated that they did not see appellant undertake any effort to brake or correct the tractor trailer he was driving. The medical personnel described appellant as unusually or alarmingly calm, with a "very flat" demeanor, but not in shock. Appellant displayed no physical reaction when the trooper on scene told him that three individuals had died as a result of the accident, and such reaction is atypical.

---

[1] Unchallenged testimony at trial established that methamphetamine is a synthetic substance.

Appellant presented his theory that coughing caused him to blackout, and the blackout had nothing to do with methamphetamine. However, the jury also heard that immediately at the scene of the crash appellant said nothing of coughing; instead he stated that he must have blown a tire. Only later at the hospital did he describe coughing.

With regard to Dr. Logan's testimony, the State urged his credentials and studies, the defense urged a lack of reliability and speculation, and Dr. Logan himself admitted the limited value of his studies and the limited nature of his opinions. Much of Dr. Logan's testimony about methamphetamine was duplicative of the toxicologist's testimony.

Thus, a review of the record as a whole shows that the toxicologist placed appellant's blood concentration of methamphetamine at four times the abusive threshold level. Appellant previously had been incarcerated for manufacturing methamphetamine and knew he should not drive after consuming the drug. Moreover, appellant's reliance on the tussive-syncope theory of blackout is inconsistent with his initial explanation of the crash. In fact, even during trial appellant's testimony about what he took and whether he knew it to be methamphetamine was inconsistent. On this record, I would hold that Dr. Logan's opinion did not have a substantial and injurious effect or influence in determining the jury's verdict.

/s/     Sharon McCally
Justice

Panel consists of Justices Boyce, McCally, and Mirabal.[2] (Mirabal, J., majority). Publish — Tex. R. App. P. 47.2(b).

[2] Senior Justice Margaret Garner Mirabal sitting by assignment.

6