Opinion Issued December 3, 2009















In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00264-CR






AIMEE ANDREA FISHER-RIZA, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 413th District Court 

Johnson County, Texas

Trial Court Cause No. F41507




 




MEMORANDUM OPINION

 Appellant, Aimee Andrea Fisher-Riza, appeals from a judgment sentencing her
to 28 years in prison for felony murder (1) and 20 years in prison for injury to a child. (2) 
See Tex. Penal Code Ann. § 19.02 (Vernon 2003), § 22.04 (Vernon Supp. 2008). 
Appellant pleaded not guilty to the jury by reason of insanity. See Tex. Penal Code
Ann. § 8.01(a) (Vernon 2003) ("It is an affirmative defense to prosecution that, at the
time of the conduct charged, the actor, as a result of severe mental disease or defect,
did not know that his conduct was wrong."). The jury found her guilty and
determined her sentence, including an affirmative finding of a deadly weapon in the
injury to a child case. In two issues, appellant contends the trial court erred by
excluding the contents of an accident report and testimony from two expert witnesses. 
We conclude the trial court did not err by excluding cross-examination based on the
contents of the accident report and committed harmless error by excluding expert
witness testimony. We affirm. 

 Background

 In early April 2007, appellant was suspected of embezzling from her employer,
Goody's Clothing, where she worked as store manager. On the morning of April 6,
appellant left work with her 10-month old daughter Alexxus and a store employee
named Valerie Rodriguez, purportedly to make a bank deposit. Appellant never made
it to the bank and instead drove to various stores around town making several
purchases. Appellant also went to a car dealership where she left with a black SUV. 
That afternoon, after she dropped Rodriguez off at Goody's Clothing, appellant left
to drive home in the SUV with her daughter.

 On the highway, Carolyn and Charles Douglas saw appellant driving at high
speeds, weaving in and out of traffic, and passing in no-passing zones. Carolyn
called the sheriff's department to report the dangerous driving. Officer Scott received
the report and attempted to stop the SUV. Scott radioed Officer West, who also
attempted to stop appellant. Refusing to stop, appellant accelerated, drove into the
lane of oncoming traffic, and forced cars off the highway. Scott and West proceeded
to chase appellant at speeds in excess of 100 miles per hour. At one point, appellant
pulled over and came to a complete stop, but took off again when officers got out of
their cars to approach her. 

 Several officers deployed tire spikes, which successfully flattened one to three
of appellant's SUV tires, but she continued to drive at excessively high speeds. In
order to avoid hitting stopped traffic, she veered to the right, and crashed into a
concrete embankment. The force of the collision ejected her daughter Alexxus from
the SUV. Emergency personnel treated Alexxus upon finding her body, but their
attempts were futile. Alexxus died at the scene from extensive internal injuries. 
When she realized Alexxus was dead, appellant began screaming unintelligible
statements, accusing the emergency personnel of trying to kill Alexxus. 

 Trooper Whiteside prepared an accident report stating, "[I]n my opinion, this
accident occurred due to the subject being in a psychotic state of mind." At trial, the
State moved to exclude that statement from the trial on the grounds that the trooper
did not have personal knowledge of appellant's mental condition, that the trooper's
statement was based on hearsay, and that the trooper was unqualified as an expert. 
Appellant sought to offer the evidence as expert testimony of appellant's mental state,
as impeachment of the trooper's trial testimony, as evidence required for due process,
and as evidence permitted under the Confrontation Clause. The trial court held a
hearing outside the presence of the jury and determined the statement was
inadmissible. 

 In her defense at trial, appellant introduced her ex-husband's testimony
describing her history of mental illness. Appellant also introduced expert testimony
describing her mental condition at the time of the collision. The trial court, however,
excluded two witnesses who had treated appellant's mental illnesses in the past.


Standard of Review

 Because all of appellant's issues concern the admission or exclusion of
evidence, we begin by examining the standard of review. We review trial court
rulings concerning admission or exclusion of evidence under an abuse of discretion
standard. Sexton v. State, 93 S.W.3d 96, 99 (Tex. Crim. App. 2002); Erdman v.
State, 861 S.W.2d 890, 893 (Tex. Crim. App. 1993). The decision whether an expert
witness is qualified to testify is a matter for the trial court's discretion. Harris County
Hosp. Dist. v. Estrada, 872 S.W.2d 759, 762 (Tex. App.--Houston [1st Dist.] 1993,
writ denied). A trial court abuses its discretion when it acts arbitrarily and
unreasonably, without reference to any guiding rules or principles. Montgomery v.
State, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). 

Exclusion of Contents of Accident Report

 In her first issue, appellant states, "The trial court erred in selectively excluding
the testimony of Trooper Mitch Whiteside regarding his 'Major Accident
Investigation' report." Appellant contends the trooper's opinion is (a) admissible
expert testimony, (b) admissible impeachment evidence, and (c) admissible under the
United States Constitution.

 A. Expert Testimony

 The trial court properly determined that the trooper's description of appellant
as "psychotic" is inadmissible as expert evidence of appellant's mental state because
the trooper is not qualified to make that determination. Rule 702 of the Texas Rules
of Evidence allows a qualified expert to provide evidence about a subject that
requires specialized knowledge. Tex. R. Evid. 702. Before admitting expert
testimony under Rule 702, the trial court must be satisfied, in addition to other
factors, that the witness qualifies as an expert by reason of his knowledge, skill,
experience, training, or education. Rodgers v. State, 205 S.W.3d 525, 527 (Tex.
Crim. App. 2006).

 Police officers are not qualified to render expert opinions regarding accidents
based on their positions as police officers alone. DeLarue v. State, 102 S.W.3d 388,
396 (Tex. App.--Houston [14th Dist.] 2003, pet. ref'd.). Police officers, however,
are qualified to testify regarding accident reconstruction if they are trained in that
science and possess a high degree of knowledge sufficient to qualify as an expert. Id. 
In DeLarue, the court found that Officer Pearson's special knowledge and experience
reconstructing accidents made him qualified to give his opinion concerning how a car
rollover physically occurred and who was driving the car. Id. at 397. Officer
Pearson's special knowledge was derived from "specialized education, practical
experience, and an on-site inspection of the accident scene." Id. 

 Although he has specialized knowledge in reconstructing accidents, the trooper
acknowledged he did not have specialized knowledge in mental illnesses, nor any
qualifications to give an opinion that appellant was "psychotic." Trooper Whiteside
has the qualifications to testify about the physical cause of the collision, such as
deflated tires, but he has no qualifications to opine that the accident occurred due to
appellant's psychosis. We hold the trooper is unqualified to give an expert opinion
that "this accident occurred due to the subject being in a psychotic state of mind." 
See id. 

 Although the trooper's description of appellant as "psychotic" may have been
admissible as lay witness testimony of appellant's mental state, here it is inadmissible
because the evidence is not based on the trooper's personal perception. Rule 701 of
the Rules of Evidence states, "If the witness is not testifying as an expert, the witness'
testimony in the form of opinions or inferences is limited to those opinions or
inferences which are (a) rationally based on the perception of the witness and (b)
helpful to a clear understanding of the witness' testimony or the determination of a
fact in issue." Tex. R. Evid. 701. Rule 701 allows a witness's testimony and opinion
that is "based upon firsthand knowledge." Ellison v. State, 201 S.W.3d 714, 723
(Tex. Crim. App. 2006).

 The trooper testified outside the presence of the jury that he used the word
"psychotic" not due to personal knowledge about appellant's mental state, but instead
based on "interviews with other people." He stated that his use of the word was not
based on his "firsthand experience" with appellant at the scene, as he was with her for
only two minutes. Because the record shows the trooper lacked firsthand knowledge,
he is not qualified as a lay witness to testify that appellant was psychotic. See id.

 B. Impeachment 

 Appellant contends she should have been allowed to admit evidence that the
trooper used the word "psychotic" in his accident report to impeach his trial
testimony. The State contends the trial court properly excluded the evidence because
it was overly prejudicial. Assuming the evidence was admissible for impeachment,
we conclude the trial court did not abuse its discretion by excluding it based on its
determination the evidence was overly prejudicial. 

 Rule 613(a) of the Rules of Evidence permits a party to impeach a witness with
a prior inconsistent statement. Tex. R. Evid. 613(a); see Lopez v. State, 86 S.W.3d
228, 230 (Tex. Crim. App. 2002). Evidence admissible as impeachment under rule
613 may be excluded under Rule of Evidence 403 if its probative value is
substantially outweighed by its prejudicial effect. See Winegarner v. State, 235
S.W.3d 787, 791 (Tex. Crim. App. 2007). Rule 403 provides that, "[a]though
relevant, evidence may be excluded if its probative value is substantially outweighed
by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or
by considerations of undue delay, or needless presentation of cumulative evidence." 
Tex. R. Evid. 403. "The rule gives the trial court considerable latitude to assess the
courtroom dynamics, to judge the tone and tenor of the witness' testimony and its
impact upon the jury, and to conduct the necessary balancing." Winegarner, 235
S.W.3d at 791. "The rule thus allows different trial judges to reach different
conclusions in different trials on substantially similar facts without abuse of
discretion." Id. Rule 403 provides factors under which relevant evidence may be
excluded. A trial court must consider (1) the inherent probative force of the evidence,
(2) the proponent's need for the evidence, (3) any tendency of the evidence to suggest
decision on an improper basis, (4) any tendency of the evidence to confuse or distract
the jury from the main issues, (5) any tendency of the evidence to be given undue
weight by a jury that has not been equipped to evaluate the probative force of the
evidence, and (6) the likelihood that presentation of the evidence will consume an
inordinate amount of time or repeat evidence already admitted. Casey v. State, 215
S.W.3d 870, 880 (Tex. Crim. App. 2007).

 Under the first factor, the inherent probative force of the evidence is minimal. 
Outside the presence of the jury, the trooper testified that "he misused the word
psychotic" and that a more appropriate description was that appellant's behavior was
"irrational." Although there is an inconsistency between the reference to "psychotic,"
as the word would be used by a lay person, and "irrational," the difference would not
likely show the trooper lacked credibility due to that discrepancy alone. This factor
weighs slightly in favor of admitting the evidence. 

 The second factor concerns the proponent's need for the evidence. Here,
appellant did not need evidence that the trooper changed "psychotic" to "irrational." 
The evidence about the purported inconsistency between the trooper's use of
irrational rather than psychotic relates to his credibility as a witness. The focus of the
trial, however, was whether appellant was sane, which was a matter unrelated to the
trooper's credibility as a witness concerning how the collision occurred, which was
largely undisputed at the trial. This factor weighs heavily in favor of excluding the
evidence.

 In examining the third, fourth, and fifth factors, we determine whether there is
a strong tendency of the evidence to suggest decision on an improper basis, the
tendency of the evidence to confuse or distract the jury from the main issues, and the
tendency of the evidence to be given undue weight by a jury that has not been
equipped to evaluate the probative force of the evidence. Because the trooper could
not properly testify as an expert or lay witness that appellant was psychotic, the label
had no probative value as primary evidence. Even if the jury were instructed to limit
its consideration of the evidence to determine the trooper's credibility as a witness,
the trial court could reasonably have determined there is a tendency the jury would
consider this as primary evidence of appellant's mental condition, rather than
evidence of an inconsistent statement. These factors weigh in favor of exclusion of
the evidence. 

 The sixth factor weighs in favor of admission of the evidence because the
presentation of the evidence would not consume an inordinate amount of time or
repeat evidence already admitted. 


 Although the evidence may have suggested the trooper lacked credibility and
may have taken little time to introduce, the other factors support the trial court's
ruling to exclude the evidence because appellant did not need the evidence and the
jury may have erroneously considered it as primary evidence of appellant's mental
state. See Winegarner, 235 S.W.3d at 791. We hold the trial court did not abuse its
discretion by determining the evidence was overly prejudicial as compared to its
probative value. 

 C. The Constitution

 Appellant contends her due process rights were violated by the exclusion of the
evidence. Courts "have found the exclusion of evidence to be unconstitutionally
arbitrary or disproportionate only where it has infringed upon a weighty interest of
the accused." Potier v. State, 68 S.W.3d 657, 659-60 (Tex. Crim. App. 2002). "At
a minimum, a defendant must demonstrate that the excluded evidence was important
to his defense." Id. at 663. Here, the trial court properly excluded the single word
"psychotic," but allowed other evidence of appellant's mental state to be admitted at
the trial. Because appellant cannot show that the exclusion of the single word
deprived her of a meaningful defense, we hold appellant's due process rights were not
violated. See id. 

 Appellant further contends the exclusion of the evidence violates the
Confrontation Clause. The Confrontation Clause, however, is not implicated when
the use of the evidence is for impeachment because the Confrontation Clause bars the
use of out-of-court testimonial statements introduced to establish the truth of the
matter asserted. See Del Carmen Hernandez v. State, 273 S.W.3d 685, 687-89 (Tex.
Crim. App. 2008) (holding prior inconsistent statement admitted to impeach witness's
credibility was "nonhearsay, did not implicate the appellant's confrontation rights and
was therefore admissible"). We hold the exclusion of the purported impeachment
evidence does not violate the Confrontation Clause. See id.

 We overrule appellant's first issue.


Exclusion of Expert Testimony

 In her second issue, appellant asserts she was harmed by the trial court's
erroneous exclusion of expert testimony of two of her witnesses, John Loggins and
Dr. Kelly R. Goodness, because their testimony was relevant to her affirmative
defense of insanity and should have been admitted under Rule 401 of the Texas Rules
of Evidence and article 38.86 of the Texas Code of Criminal Procedure. See Tex. R.
Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the
existence of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence."); Tex. Crim. Proc.
Code Ann. art. 38.36 (Vernon 2005) ("In all prosecutions for murder, the state or the
defendant shall be permitted to offer testimony as to all relevant facts and
circumstances surrounding the killing . . . .").

 Loggins is a licensed professional counselor who treated appellant in 2002 for
grief following the death of appellant's sister. In their sessions, he learned appellant
was being medicated for a diagnosis of bipolar disorder. Loggins did not diagnose
appellant as bipolar. Loggins states, "I didn't do a full diagnosis myself at the time. 
I accepted at face value that she was Bipolar Type One with manic features." Loggins
states that appellant's behavior during the course of the treatment was "often angry,
argumentative," "scattered from session to session," and "consistent with the problems
she came in with and also with being under a number of stresses," including an
investigation by the Texas Department of Family and Protective Services and a 
separation from her husband. Loggins never evaluated appellant to determine whether
she was sane, nor had he evaluated appellant since 2002.

 Goodness is a clinical psychologist who was instructed by another court's order
to determine whether appellant had a mental illness that made her incompetent to stand
trial for a separate legal issue in 2002. In a one hour interview of appellant, Goodness
believed appellant had a mental illness that was either bipolar or cyclothymic disorder,
but he could not determine which illness it was due to appellant's lack of cooperation. 
Goodness did not evaluate appellant to determine whether she was sane, nor had
Goodness evaluated appellant since 2002.

 A. Error Analysis

 The State objected to these witnesses on the grounds that Loggins did not do the
diagnostic evaluation himself and that the testimony of both Loggins and Goodness
was too remote in time to assist the jury in making an insanity determination.

 1. Qualifications to Testify

 Although Loggins is not a psychologist, his state counselor license authorizes
him "to assess, to [diagnose], to counsel . . . individuals for mental health problems." 
See Roberts v. Williamson, 111 S.W.3d 113, 121-22 (Tex. 2003) (holding board
certified pediatrician qualified to render expert opinion as to child's neurological
injuries although he was not a neurologist because he had experience and expertise
regarding specific causes and effects of injuries at issue). We hold that Loggins was
qualified to testify about his assessment of appellant's illness. See id. 

 Although appellant does not challenge Goodness's qualifications to testify, we
note that she is a clinical psychologist, and practices clinical psychology and forensic
psychology. She has a Ph.D. in psychology, and she has been licensed by the State of
Texas as a psychologist for ten years. Loggins and Goodness, therefore, were
qualified to testify about appellant's mental health issues.

 2. Relevance of Evidence

 The State contends the expert testimony is "too remote to be relevant to the
determination of whether appellant was insane at the time of the commission of the
offense." Generally, all relevant evidence is admissible. See Tex. R. Evid. 401. 

 Rule 401 and article 38.36 have no time limit for which relevant facts may be
admissible and several cases have admitted evidence despite a substantial separation
of time. See Sanne v. State, 609 S.W.2d 762, 772 (Tex. Crim. App. 1980) (any
objection based on remoteness of time would go to weight, not admissibility, of
testimony); Baker v. State, 368 S.W.2d 627 (Tex. Crim. App. 1963) (prior
mistreatment of wife by husband six years before her death admissible); Brock v. 
State, 275 S.W.3d 586, 590 (Tex. App.--Amarillo 2008, pet. ref'd.) (prior hostile
offenses by defendant against victim six years before her death admissible). The issue
of sanity is not strictly determined by medical evidence; the jury may weigh other
factors. Aschbacher v. State, 61 S.W.3d 532, 535 (Tex. App.--San Antonio 2001, pet.
ref'd.). Objections based on remoteness go to the weight, not the admissibility of the
testimony. Sanne, 609 S.W.2d at 772 (citing Brown v. Perez, 89 Tex. 282, 287, 34
S.W. 725, 728 (1896)); Nethery v. State, 692 S.W.2d 686, 706-07 (Tex. Crim. App.
1985); Russo v. State, 228 S.W.3d 779, 798 (Tex. App.--Austin 2007, pet. ref'd.).

 Although the testimony of Loggins and Goodness concerns events that took
place five years prior to the offense, the evidence is relevant by tending to show that
appellant had in the past suffered from a mental illness. Given appellant's mental
health history, the testimony of appellant's expert witnesses was not too remote in time
as to be irrelevant to appellant's insanity defense. See Sanne, 609 S.W.2d at 772. 

 We hold that the evidence about appellant's past mental health problems was
relevant to her sanity defense.

 3. 403 Balancing Test

 The State argues that, even if the testimony is relevant, it should be excluded
under rule 403. Tex. R. Evid. 403. We apply the balancing test factors described
above.

 Concerning the first factor, the testimony of Loggins and Goodness was relevant
and had inherent probative force because it established a history of appellant's
possible mental illness that could be indicative of her mental state at the time of the
offense. See Casey, 215 S.W.3d at 879-80. The first factor, therefore, weighs in favor
of admission of the evidence. 

 The second factor asks us to examine appellant's need for the evidence. The
evidence by Loggins and Goodness would have suggested appellant had mental health
issues at the time of the collision because appellant had a history of mental health
problems. The excluded evidence, however, did not directly address the pertinent
issues of appellant's sanity because neither Loggins or Goodness ever evaluated
appellant for sanity. Furthermore, the contents of the excluded testimony were
addressed by appellant's ex-husband, who testified about appellant's history of mental
illness. We conclude the second factor weighs slightly in favor of admission. 

 The next four factors all weigh in favor of admission. The third, fourth, and
fifth factors weigh in favor of admission because similar testimony was allowed by the
trial court, so it is unlikely that the testimony would have confused or distracted the
jury from the main issues or that the jury was unequipped to evaluate the testimony. 
See id. The sixth factor also weighs in favor of admission because the testimony, if
admitted, would not have consumed an inordinate amount of time and would have
reinforced appellant's other mental history evidence. See id. Because the six factors
weigh in favor of admission, we hold the trial court erred by excluding testimony of
appellant's two expert witnesses.

 B. Harm Analysis

 Having determined that the exclusion of appellant's expert witness testimony
was error, we must decide how the trial court's exclusion of the testimony likely
affected the jury's decision. We conclude the exclusion of the evidence is harmless
because (1) neither witness could testify whether appellant was sane, and (2) other
witnesses testified about appellant's past mental health history, which was the same
subject of the excluded testimony.

 The Texas Rules of Appellate Procedure require appellate courts to disregard
any error not affecting substantial rights of an appellant. Tex. R. App. P. 44.2(b);
Johnson v. State, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001). Substantial rights are
affected only when the error has a significant and injurious effect on the jury. 
Johnson, 43 S.W.3d at 4. If there is no influence or only a slight effect on the finder
of fact, reversal is not required. Id. "In assessing the likelihood that the jury's
decision was adversely affected by the error, the appellate court should consider
everything in the record, including any testimony or physical evidence admitted for
the jury's consideration, the nature of the evidence supporting the verdict, the
character of the error, and how it might be considered in connection with other
evidence in the case." Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). 
 The focus of the proffered testimony by Loggins and Goodness concerns
appellant's mental health history. The reason appellant wished to include the
testimony was to broaden the jury's knowledge regarding appellant's past mental
health. Appellant's ex-husband, Clifton Brazier, testified that appellant had episodes
of unusual behavior related to her bipolar disorder during their marriage between 1995
to 2003, which is the same period of time when Loggins and Goodness treated
appellant in 2002. Testimony regarding the behavior included multiple violations of
restraining orders, extreme behavioral problems, violent acts, and odd behavior.
Evidence of appellant's mental health history was, therefore, before the jury. 

 Neither Loggins nor Goodness examined appellant for sanity at any time and,
thus, their testimony does not directly address whether appellant was sane at the time
they saw her in 2002. Appellant did introduce expert testimony describing her mental
state at the time of the collision. Appellant introduced testimony from Dr. Black, a
psychologist assigned to evaluate her after the collision. Dr. Black worked at Vernon
State, a maximum security hospital. He treated appellant for two months in the
summer of 2007 while working to rehabilitate appellant so that she could eventually
be competent to stand trial in this case. Dr. Black diagnosed appellant with "Bipolar
One Disorder, most recent episode manic severe with psychotic features" and
discussed behavioral symptoms of that diagnosis. Additionally, Dr. Black testified he
thought appellant was probably "mentally ill at [the time of the offense]." Dr. Black
testified "with reasonable certainty that she was probably in a manic state" on the day
of the offense. 

 Appellant also introduced the testimony of Dr. Thiruvengadam, another
psychiatrist who evaluated appellant shortly after the collision. He diagnosed her as
bipolar with psychotic features. He also testified that when he treated her in an
emergency visit she was "very agitated and could not be controlled." He noted that
she was on various "antipsychotic" and "antimanic" medications that he prescribed
and continued to administer to her for the treatment of manic depressive disorder.

 The excluded testimony was repetitive of the evidence of the history of mental
illness, as described by appellant's husband. More importantly, the excluded evidence
did not directly pertain to the question of whether appellant was sane at the time of the
collision because neither Loggins or Goodness ever evaluated appellant for sanity. 
Furthermore, appellant presented the testimony of two experts who described her
mental condition at the time of the collision. 

 Because the trial court's exclusion of appellant's expert testimony did not
substantially injure the rights of appellant, we hold the error is harmless. Williams v.
State, No. 01-07-00296-CR, 2009 WL 1635576, at *9 (Tex. App.--Houston [1st Dist.]
June 11, 2009, pet. filed) (holding any error in excluding psychiatric testimony
regarding Williams' state of mind was harmless and did not affect Williams'
substantial rights). Conclusion

 We affirm the judgment of the trial court.



 

 Elsa Alcala


 Justice


Panel consists of Justices Keyes, Alcala, and Hanks. 


Do Not Publish. Tex. R. App. P. 47.2(b).
1. This is Count One of the indictment.
2. This is Count Three of the indictment.