**Opinion issued February 13, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-10-00504-CR

———————————

**MICHAEL PAUL EVERITT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the Harris County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 1655755**

---

## MEMORANDUM OPINION ON REMAND

A jury convicted appellant Michael Paul Everitt of driving while intoxicated.

*See* TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2013). The trial court assessed

punishment of 180 days in county jail, suspension of Everitt's driver's license for

one year, and a fine in the amount of $2,000. The court suspended the jail sentence and placed Everitt on community supervision for two years.

Everitt brought three issues on appeal. In his third issue, he argued that the admission of evidence that he had taken a narcotic pain reliever, hydrocodone, was error because there was no expert testimony that his use of the medication was relevant to the question of intoxication. We affirmed the trial court's judgment, holding in part that Everitt's challenge to the admission of expert testimony was not preserved for appeal. The Court of Criminal Appeals held that the objection was preserved and remanded for consideration of the merits of Everitt's third issue: whether the trial court abused its discretion by admitting into evidence a videorecording in which Everitt admitted having used hydrocodone on the night he was arrested. *Everitt v. State*, 407 S.W.3d 259 (Tex. Crim. App. 2013).

We affirm.

## Background

Houston Police Department Officer A. Richberg was driving his patrol car around 2:30 a.m. when he saw appellant Michael Paul Everitt riding a motorcycle, speeding, and changing lanes without signaling. When Officer Richberg stopped Everitt, he observed signs of intoxication. The smell of alcohol emanated from Everitt's helmet, he had difficulty maintaining his balance, and he repeatedly failed to engage the motorcycle's kickstand. In addition, Everitt had difficulty

2

understanding questions, he slurred his words, and he had bloodshot eyes. During approximately 25 minutes of questioning Everitt admitted to having drunk alcohol around 5:00 p.m. the prior day. He declined to perform any field sobriety tests.

HPD Officer B. Taylor also responded to the traffic stop. She smelled alcohol on Everitt's breath, and she noticed that his eyes were glassy, he could not stand without swaying, and his speech was slurred. She also said that Everitt was talkative and asked her personal questions. She arrested him for driving while intoxicated and placed him into the back of her patrol car, where the smell of alcohol became "almost overwhelming."

At approximately 3:45 a.m., Officer Taylor brought Everitt to the "Intox Room" at the police station, where an HPD sobriety test administrator asked him to perform sobriety tests. A videorecording was made showing Everitt performing the Rhomberg test, in which he was asked to close his eyes, tilt his head back, and estimate when 30 seconds had passed. Everitt had an abnormal side-to-side sway, and he failed to accurately estimate 30 seconds' time. Instead, after 55 seconds he told the officers that 60 seconds had passed, although he acknowledged that the instruction had been to estimate only 30 seconds. Based upon his performance on the test, the administrator determined that he was impaired. Everitt refused to cooperate with any other field sobriety tests, and when Officer Taylor and the test administrator asked whether he had any injuries, he said that he had taken

3

"hydrocodeine . . . earlier today maybe" due to a back injury. The officer then promptly informed Everitt of his *Miranda* rights.

At trial, the State sought to introduce into evidence the videorecording of Everitt's admission that he had used hydrocodone. Everitt moved to suppress his statement arguing that, under *DeLarue v. State*, 102 S.W.3d 388 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd), and *Layton v. State*, 280 S.W.3d 235 (Tex. Crim. App. 2009), his statement regarding hydrocodone use was irrelevant unless accompanied by competent expert testimony.[1]

The trial court held an evidentiary hearing on the motion to suppress. Officer F. LaSalle, a Drug Recognition Expert, testified about his qualifications, the impairing effects of hydrocodone mixed with alcohol, and methods he uses to determine whether a person is impaired due to the use of alcohol, drugs, or both. He also testified that the effects of a drug like hydrocodone last from six to eight hours.

---

[1] In *DeLarue v. State*, 102 S.W.3d 388 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd), the court of appeals held that the trial court erred when it admitted evidence showing the presence of marijuana in the defendant's system without proof of reliability through a *Kelly–Daubert* hearing. 102 S.W.3d at 401.

In *Layton v. State*, 280 S.W.3d 235 (Tex. Crim. App. 2009), the Court held that, "without expert testimony to provide the foundation required to admit scientific evidence, the testimony regarding Appellant's use of prescription medications was not shown to be relevant." 280 S.W.3d at 242.

4

The court overruled the motion to suppress and stated that the jury would be permitted to hear Everitt's statement about using hydrocodone. The court explained:

> My theory is this: He discriminates in his own mind between drinking yesterday and taking hydrocodone today. He's stopped at 2:35 A.M., which is two and a half hours into today. Officer LaSalle said that it is a psycho-physical reactive drug when taken for approximately six to eight hours. We don't know the dosage. We do know whatever is there could be psycho-physical reactive at the time he stopped that night. I think it's relevant, probative, and while prejudicial, not unfairly prejudicial.

The court also ruled that Officer LaSalle could testify as an expert witness.

At trial, Officer LaSalle watched the videorecording and testified that he saw "several signs of intoxication that would be consistent with the use of hydrocodone." He further testified that if Everitt had taken hydrocodone at midnight or later, he would still have been under the influence of the drug when he was driving at 2:30 a.m. Officer LaSalle specifically identified Everitt's slowness in responding to directions, abnormal sway during the Rhomberg test, and difficulty estimating time as signs of impairment. He explained that difficulty estimating time may impair a person's driving ability by causing him to misjudge the amount of time he has to make a decision.

The jury instruction defined intoxication as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those

5

substances into the body." The jury convicted Everitt of driving while intoxicated, the court assessed punishment, and Everitt appealed.

**Analysis**

In his third issue, Everitt contends that the trial court abused its discretion by admitting his statement that he used hydrocodone. He argues that the expert testimony offered to explain how his use of hydrocodone was relevant to the question of his intoxication was unreliable because it did not rest on reliable information or properly apply a valid technique. Therefore, to resolve this issue pertaining to the admissibility of the evidence of his use of hydrocodone, we must consider both the relevance of Everitt's statement and the admissibility of the expert testimony.

We review a trial court's ruling on the admission of evidence, including expert testimony, for an abuse of discretion. *Layton v. State*, 280 S.W.3d 235, 240 (Tex. Crim. App. 2009); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). As with other types of evidentiary rulings, we will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Layton*, 280 S.W.3d at 240 (citing *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)).

Generally, all relevant testimony is admissible. TEX. R. EVID. 402. "Relevant evidence means evidence having any tendency to make the existence of any fact

that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. When determining if proffered evidence is relevant, the court must consider whether there is a logical connection between the evidence and the proposition sought to be proved. *Layton*, 280 S.W.3d at 240.

Everitt relies on *Layton* for the proposition that a connection between drug use and intoxication is not automatically presumed when a defendant is charged with driving while intoxicated. In *Layton*, the defendant was stopped for a traffic violation, and he told the officer that he had taken Xanax and Valium. *Id.* at 237. The statement was recorded by the officer's dashboard-mounted video camera and played before the jury at trial. *Id.* at 237–38. Layton was charged with driving while intoxicated, and the jury was instructed that intoxicated meant "not having the normal use of mental or physical faculties by reason of the introduction of alcohol into the body." *Id.* at 241. Because the charge was limited to intoxication by use of alcohol, some expert testimony was needed to establish a connection between the defendant's use of controlled substances and the impact of such use on his later intoxication. *See id.* at 242. The Court of Criminal Appeals noted that "to be relevant in this specific case, the evidence needed to influence the jury's determination of whether Appellant was intoxicated by alcohol, not another substance combined with alcohol." *Id.* at 241. That is, the evidence of drug use

7

would not have been relevant to Layton's case without additional evidence showing the synergistic effect of the drugs on his intoxication by alcohol, considering the time when the drugs and alcohol were used. *Id.*

Everitt was charged with driving while intoxicated, but unlike *Layton* the charge was not limited to intoxication by consumption of alcohol. The jury was instructed that intoxicated meant "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances into the body." In this case the evidence that Everitt used hydrocodone tends to make it more probable that he was intoxicated by reason of introduction of alcohol or drugs or both. *See* TEX. R. EVID. 401.

In addition, the State offered expert testimony to establish the intoxicating effects of the use of hydrocodone. Rule of Evidence 702 provides, "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702. Expert opinion testimony must be reliable, relevant, and helpful to the jury. *Kelly v. State*, 824 S.W.2d 568, 572 (Tex. Crim. App. 1992). The qualification of an expert witness is a two-step inquiry. "A witness must first have a sufficient background in a particular field, and a trial

judge must then determine whether that background goes to the matter on which the witness is to give an opinion." *Davis v. State*, 329 S.W.3d 798, 813 (Tex. Crim. App. 2010). The reliability of scientific evidence depends on whether the evidence has a basis in sound scientific methodology. *Layton*, 280 S.W.3d at 241. To show reliability, the following three criteria must be satisfied: (1) the underlying theory is valid; (2) the technique applying said theory is valid; and (3) the technique was properly applied on the occasion in question. *Kelly*, 824 S.W.2d at 573.

Officer LaSalle's qualifications are not in dispute. He testified that he had been a certified peace officer for 16 years, he had specialized training in the area of DWI, he is certified as an intoxilyzer operator, Drug Recognition Expert, and DRE instructor, and he had attended courses pertaining to prescription drug abuse and drug identification and screening. He testified that he had training and experience that permitted him to relate how the human body is impaired by alcohol and hydrocodone. He also testified that he had been previously "recognized as an expert in ability to determine whether or not a person's impaired on medications or drugs and their effects on operating a motor vehicle."

Officer LaSalle addressed the reliability of the methods used by drug-recognition experts. He testified that "the ability to determine impairment as a result of the presence of [hydrocodone and alcohol] is valid" as a scientific theory, and he described the scientific studies that formed the basis for the evaluation. He

described the evaluation conducted by drug-recognition experts to determine "which one or more than one of the seven drug categories would be in their system." He testified that a battery of field sobriety tests would permit him to distinguish which substances caused a given subject's impairment. He discussed methods used by drug recognition experts to determine impairment as a result of the presence of hydrocodone or alcohol, which included field sobriety tests, especially indication of inability to divide attention between tasks; direct observations of the suspected impaired person, such as constricted pupil size; and clinical observations, such as blood pressure. During the *Kelly* hearing, LaSalle admitted that he had never seen Everitt before. However, he said that he could identify and describe "any possible general indicators of any one of those drugs in a person's system by looking at the video." Finally he explained the combined effect of hydrocodone and alcohol and that each has some characteristic impairments not shared by the other substance.

Officer LaSalle and the jury watched the police station videorecording. Officer LaSalle heard Everitt's recorded statement that he had used "hydrocodeine," which he explained is a common misnomer for hydrocodone, which is a narcotic pain medication. LaSalle also testified that he saw "several signs of intoxication that would be consistent with the use of hydrocodone on the video." He explained his observations, saying:

10

The subject had a low mumbled voice. It seemed to be a little raspy in his speech. He was slow to respond to directions of the person who was administering the test. When they asked him to put his feet together and hands at his side, it took him several seconds before he started to move and to do whatever it was he was asked to do. Then one field sobriety test that he actually performed, there were several signs on it that showed possible impairment for this type of substance.

Officer LaSalle opined that Everitt "obviously showed several mental and physical impairment signs as a result of the ingestion of a drug like hydrocodone."

The court ruled that Officer LaSalle's testimony was admissible. The record includes evidence that Officer LaSalle was qualified by education and experience, that his analysis was based on a valid scientific method, and that his method of applying his expertise to offer an opinion in this case was also valid. In addition, his expert testimony was relevant to a fact question at trial, namely whether Everitt was intoxicated by hydrocodone or a combination of alcohol and hydrocodone while operating a motor vehicle. *See* TEX. PENAL CODE ANN. §§ 49.01(2), 49.04. Specifically, LaSalle's testimony that he could detect the symptoms of hydrocodone and saw those symptoms exhibited in the video made it more likely that Everitt had been intoxicated while driving. In short, his testimony was relevant, reliable, and helpful to the jury. *See Kelly*, 824 S.W.2d at 572.

On appeal, Everitt argues that LaSalle's opinion was not reliable because he lacked sufficient information to do a proper drug recognition evaluation and that his testimony did not amount to a proper drug recognition evaluation. In fact, the

11

record shows that Everitt's attorney thoroughly cross-examined LaSalle on this topic and these alleged infirmities in his testimony. We do not disagree with Everitt's characterization of the evidence in this regard.

However, as we have explained, in determining whether proffered evidence is relevant, a trial court must consider the purpose for which it is offered and whether there is a logical connection between the evidence and the proposition sought to be proved. *Layton*, 280 S.W.3d at 240. Officer LaSalle's testimony was not offered to prove that Everitt had used hydrocodone or to identify "which one or more than one of the seven drug categories" was in Everitt's system at the time of his arrest. Such testimony was not necessary because Everitt's statement itself was some evidence that he had used hydrocodone near the time of his arrest.

However, there were fact questions as to when he used the hydrocodone and whether he was still subject to the drug's effects at the time of his arrest. Officer LaSalle's testimony was offered to show the kind of impairment that can result from hydrocodone use and that an indication of impairment from hydrocodone was evident in the videorecording taken shortly after Everitt's arrest. The proposition that the State was attempting to prove through this witness was that Everitt was driving while intoxicated as a result, at least in part, of the use of hydrocodone. Officer LaSalle's testimony that Everitt showed signs of impairment consistent with the use of hydrocodone supplied a logical connection between Everitt's

12

admitted use of hydrocodone and his driving. As such, this testimony was relevant. *See* TEX. R. EVID. 401.

Because the challenged evidence was relevant and reliable, we hold that the court did not abuse its discretion in admitting the videorecording of Everitt's statement and LaSalle's expert testimony.

Moreover, even if the trial court had abused its discretion by admitting the expert testimony, Everett cannot show that he was harmed. A violation of evidentiary rules that results in the erroneous admission of evidence is non-constitutional error. *See* TEX. R. APP. P. 44.2(b); *see also Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). The appropriate harm analysis is therefore the one set out in Rule 44.2(b) of the Texas Rules of Appellate Procedure, which dictates that a non-constitutional error "that does not affect substantial rights must be disregarded." *Taylor v. State*, 268 S.W.3d 571, 592 (Tex. Crim. App. 2008) (quoting TEX. R. APP. P. 44.2(b)). A substantial right is affected when an error has a substantial and injurious effect or influence in determining a jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Therefore, a criminal conviction should not be overturned for non-constitutional error if the appellate court, upon examining the record as a whole, has fair assurance that the error did not influence the jury, or had but slight effect. *Cobb v. State*, 85 S.W.3d 258, 272 (Tex. Crim. App. 2002).

13

In assessing the likelihood that the jury's decision was adversely affected by the error, we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the character of the alleged error, and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider any jury instruction given by the trial court, the State's theory and any defensive theories, closing arguments, and voir dire, if material to the claim. *Id.* at 355–56.

At trial, the jury instruction defined intoxication as "not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, or a combination of two or more of those substances into the body." Throughout the course of the trial there was overwhelming evidence of intoxication, even ignoring the evidence relating to Everitt's use of hydrocodone.

Officer Richberg testified that Everitt was driving dangerously, including speeding and switching lanes without a signal. Additionally, he testified that Everitt had trouble keeping his balance when he stopped his motorcycle including multiple attempts to put his kickstand down. Furthermore, Richberg stated, "When I walked up to him, I was able to smell a strong odor of alcohol coming from his

body. Then when I actually spoke to the defendant, I smelled alcohol coming from his helmet from the mouthpiece by his helmet."

Officer Taylor testified that Everitt "had an inability to stand on his own without swaying." She noticed "a strong odor of alcoholic beverages coming from his breath," and testified that his "speech was slurred." Additionally, she stated: "I noticed that his eyes were glassy. He was very talkative. Like I said, he was asking me personal questions."

The testimony from Officers Richberg and Taylor, coupled with Everitt's admission to drinking alcohol earlier in the evening, independently support the conviction of intoxication. Furthermore, the State's closing argument did not place great emphasis on the hydrocodone evidence, focusing its argument on the totality of the circumstances suggesting intoxication.

Having held that the admission of the videorecording was not error and having concluded that, in any event, any error was harmless, we overrule Everitt's third issue.

## Conclusion

We affirm the judgment of the trial court.


Michael Massengale
Justice

Panel consists of Chief Justice Radack, and Justices Sharp and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

16